**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 NOV 18 PM 3: 25

CLERK

| | |
|---|---|
| MyWebGrocer, Inc. | ) |
| Plaintiff | ) Civil Action No. __5:16-CV-310__ |
| | ) BY |
| | ) DEPUTY CLERK |
| v. | ) COMPLAINT FOR |
| | ) DECLARATORY JUDGMENT |
| | ) |
| Adlife Marketing & | ) |
| Communications Co., Inc.. | ) |
| | ) DEMAND FOR JURY TRIAL |
| Defendant | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff MyWebGrocer, Inc. ("MyWebGrocer"), for its Complaint against Defendant

Adlife Marketing & Communications, Co., Inc. ("Adlife") alleges as follows:

### Nature of Action

1.     This is a declaratory judgment action on behalf of MyWebGrocer and its

customers for non-infringement of United States copyright and, in the alternative, declaration

of appropriate copyright remedies under the U.S. Copyright Act.

### Parties

2.     Plaintiff MyWebGrocer is a corporation organized and existing under the laws

of Vermont, with a principal place of business at 20 Winooski Falls Way, Winooski, Vermont

05404.

3.     On information and belief, Defendant Adlife is a Rhode Island corporation

with a principal place of business at 38 Church St., Pawtucket, Rhode Island.

Downs
Rachlin
Martin PLLC

## Jurisdiction and Venue

4.      The Court has jurisdiction under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and under the laws of the United States concerning actions relating to copyright, 28 U.S.C. § 1338(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

6.      On information and belief, this Court has personal jurisdiction over Defendant because Defendant conducts business transactions in this State.  Defendant also solicited a copyright license agreement with MyWebGrocer in this State.

## Facts

7.      MyWebGrocer creates digital platforms for grocery stores, including developing, hosting, maintaining and optimizing e-commerce websites.

8.      The websites that MyWebGrocer develops for its retailer customers frequently use photographs of prepared food, which it licenses from various parties.

9.      One such image used by MyWebGrocer depicted a prepared plate of brisket with roasted vegetables (the "Brisket Photograph").

10.     On or about July 21, 2016, one of MyWebGrocer's customers received three Copyright Infringement Notices ("Notices") regarding the Brisket Photograph, each demanding payment of $8,000 for "willful copyright infringement."  Copies of these Notices, which were forwarded to MyWebGrocer, are attached as Exhibit A.

11.     Upon receiving the Notices, MyWebGrocer researched the Brisket Photograph and determined that it had obtained rights in the Brisket Photograph as a result of an acquisition of certain business assets in 2003.

2

12.     On August 19, 2016, MyWebGrocer conveyed this to Adlife via email and asked for evidence supporting Adlife's claim of ownership of the Brisket Photograph.  On the same day, MyWebGrocer took the Brisket Photograph down pending a resolution of the dispute.

13.     On September 9, 2016, Adlife  claimed ownership of Copyright Registration No. No. VA0002012581, which is a group registration dated August 5, 2016 for 135 photographs created in 1999, without proof that said registration actually covered the Brisket Photograph in question.

14.     On September 14, 2016, having still not received adequate proof of ownership in the form a Copyright Registration Certificate and a copy of the corresponding deposit material submitted to the U.S. Copyright Office, MyWebGrocer sent a letter reiterating its request for such proof.  A copy of this letter is attached as Exhibit B.

15.     Adlife responded on September 14, 2016, claiming it had provided "copyright information" to MyWebGrocer already, and stating that it was "processing further instances" of infringement.  Adlife threatened to contact MyWebGrocer customers directly if MyWebGrocer did not "work with" Adlife.

16.     On September 16, 2016, through counsel, MyWebGrocer reiterated its request for information needed to assess the validity of Adlife's copyright infringement claim, including the Certificate of Registration together with the deposit material included in the underlying copyright application and a list of licensees from 1999-2003.  MyWebGrocer also asked for a complete list of images Adlife believes MyWebGrocer has infringed or is currently infringing.

3

17.     On September 19, 2016, during a call with MyWebGrocer's counsel, Adlife agreed to provide MyWebGrocer with the Certificate of Registration, together with the deposit material, for each photo it believed MyWebGrocer has used without permission or license.

18.     On or about September 19, 2016, unbeknownst to MyWebGrocer, a second MyWebGrocer customer received a Copyright Infringement Notice ("Second Notice") regarding an image of a tuna salad sandwich (the "Tuna Sandwich Photograph"), demanding payment of $8,000 for "willful copyright infringement." A copy of the Second Notice, which was later forwarded to MyWebGrocer, is attached as Exhibit C.

19.     On November 1, 2016 Adlife sent counsel for MyWebGrocer three additional images alleged to be owned by Adlife and allegedly used without permission or license, specifically: an image of a turkey and ham wrap (the "Turkey Wrap Photograph"), an image of a prepared sausage and pasta dish (the "Sausage Pasta Photograph), and an image of pork ribs (the "Pork Rib Photograph).  These images together with the Brisket Photograph and the Tuna Sandwich Photograph are collectively referred to as the "Accused Images."

20.     On November 2, counsel for MyWebGrocer requested that Adlife provide Certificates of Registration and corresponding deposit materials for each of the Accused Images.  To date, Adlife has not provided this information.

21.     Although further correspondence was exchanged, the negotiations reached an impasse when Adlife insisted that MyWebGrocer make a damages payment of $7,500 and enter into a license going forward with Adlife covering all of Adlife's prepared foods images database, for a minimum term of 36 months at a cost of $999 per month.

4

22.     MyWebGrocer estimates that it could pay $10 per image, if not significantly less ("Market Value"), had it purchased a perpetual license for the Accused Images.

23.     On November 8, following the breakdown in negotiations, Adlife stated in an email to counsel for MyWebGrocer that the file would be turned over to "Jack Pirizzollo of Sidley Austin," who would handle the case, and further stated that "this is likely to become something much larger very quickly." A redacted copy of this email correspondence exchange is attached as Exhibit D.

24.     On November 18, Adlife sent an email to counsel for MyWebGrocer stating that "Adlife has decided to pursue the willful infringement claims individually one retailer at a time." A redacted copy of this email correspondence exchange is attached as Exhibit E.

25.     On information and belief, Adlife purports to own various photographs of prepared food and copyright registrations covering its photographs.

26.     On information and belief, Adlife tracks the use of its photographs by others, and send a copyright infringement notice to any third party it discovers using its photographs in the same form as the notices attached as Exhibits A and C.

27.     On information and belief, if Adlife does not receive the fee it demands, Adlife files a copyright infringement lawsuit in the District of Massachusetts, demanding $25,000 for the infringement of a single photograph.

28.     On information and belief, Adlife filed seven such lawsuits during the months of August and September, 2016.

29.     The above allegations are incorporated in the claims below.

## COUNT I
## Declaratory Judgment of No Copyright Infringement

30.     MyWebGrocer has a reasonable apprehension of suit by Adlife alleging copyright infringement.

31.     There is a substantial and continuing justiciable controversy between MyWebGrocer and Adlife as to Adlife's right to threaten or maintain suit for infringement of the Accused Images by Adlife or its customers, as to the validity, enforceability and scope of the alleged copyright in the Accused Images, and to whether the Accused Images as used by MyWebGrocer or its customers infringes any valid and enforceable rights owned by Adlife.

32.     Upon information and belief, the Accused Images as used by MyWebGrocer do not infringe any valid and enforceable copyright owned by Adlife.

33.     In the alternative, if MyWebGrocer's use of the Accused Images does infringe any copyright owned by Adlife,  MyWebGrocer's use was not willful and remedies for such use should not exceed Market Value.

34.     The Court should issue a declaratory judgment stating that Adlife is without right or authority to threaten or to maintain suit against MyWebGrocer or its customers for alleged copyright infringement, that no valid and enforceable copyright is infringed by MyWebGrocer or its customers based on its use of the Accused Images, or if infringement is found, it was not willful and any remedy should not exceed Market Value.

### PRAYER FOR RELIEF

WHEREFORE, MyWebGrocer prays for relief as follows:

1)      Entry of judgment that Adlife is without right or authority to threaten or to maintain suit against MyWebGrocer or its customers for alleged copyright infringement and that no valid and enforceable copyright is infringed by MyWebGrocer or its customers based on its

6

use of the Accused Images, or if infringement is found, it was not willful and any remedy should not exceed Market Value per Accused Image.

2)    Entry of a preliminary injunction enjoining Adlife, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Adlife from threatening MyWebGrocer or any of its agents, servants, employees, or customers with infringement litigation or charging any of them either verbally or in writing with copyright infringement.

3)    Entry of judgment for its costs and reasonable attorney fees incurred by MyWebGrocer.

4)    Such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury.

Dated at Burlington, Vermont this $\underline{18}$ day of November, 2016.

DOWNS RACHLIN MARTIN PLLC

Cathleen E. Stadecker
cstadecker@drm.com
Peter B. Kunin
pkunin@drm.com
199 Main Street
PO Box 190
Burlington, VT 05402-0190
Phone: 802.863.2375
Fax: 802.862.7512

Attorneys for Plaintiff, MyWebGrocer, Inc.

17095011.2

7