UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MYWEBGROCER, INC.<br>    Plaintiff and Counterclaim<br>    Defendant<br><br>v.<br><br>ADLIFE MARKETING &<br>COMMUNICATIONS CO., INC.<br>    Defendant and Counterclaim<br>    Plaintiff | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 5:16-cv-00310 gwc<br>)<br>)<br>)<br>)<br>)<br>) |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant Adlife Marketing & Communications Co., Inc. ("Adlife") hereby submits its Answer, Affirmative Defenses and Counterclaim to the Complaint in this matter filed by Plaintiff MyWebGrocer ("MyWebGrocer").

### ANSWER

In response to the numbered paragraphs of the Complaint, Adlife states as follows:

### Nature of Action

1. Adlife admits that the Complaint purports to set forth a claim for declaratory judgment. Except as expressly admitted, Adlife denies the allegations in paragraph 1.

### Parties

2. Adlife lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.

3. Adlife admits the allegations in paragraph 3.

### Jurisdiction and Venue

4. Adlife admits the allegations in paragraph 4.

5. Adlife denies the allegations in paragraph 5.

6. Adlife admits that it conducts business in Vermont. Except as expressly admitted, Adlife denies the allegations in paragraph 6.

## Facts

7. Adlife lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies them.

8. Adlife lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 and therefore denies them.

9. Adlife admits that MyWebGrocer used a photograph of brisket with roasted vegetables (the "Brisket Photograph"). Except as admitted above, Adlife denies the allegations in paragraph 9. Adlife further answers that Adlife owns the Brisket Photograph, registered as part of a collection of images titled "ADLIFE Collection 073116" under Registration Number VA0002012581.

10. Adlife admits that it sent the communications attached as Exhibit A. Adlife denies the allegations of paragraph 10 to the extent paragraph 10 seeks to characterize the document. Adlife otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies them.

11. Adlife denies the allegations in paragraph 11.

12. Adlife admits that MyWebGrocer emailed Adlife on August 19, 2016. Adlife further admits that MyWebGrocer has represented to Adlife that it took the Brisket Photograph down. Adlife lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, particularly with respect to the timing of the actions MyWebGrocer alleges that it took and therefore denies them. Adlife further answers that, to the extent that

MyWebGrocer endeavors to characterize the communication, Adlife denies the allegations in paragraph 12.

13. Adlife admits that it owns Copyright Registration No. VA0002012581, effective August 5, 2016. Except as admitted above, Adlife denies the allegations in paragraph 13. Further answering, Adlife states that subsequent to the filing of this action, Adlife has provided to MyWebGrocer proof that the registration covers the Brisket Photograph and that MyWebGrocer nevertheless continues to deny infringement.

14. Adlife admits that MyWebGrocer sent a letter dated September 14, 2016 attached as <u>Exhibit B</u>. To the extent that MyWebGrocer endeavors to characterize the letter's contents, Adlife denies the allegations in paragraph 14.

15. Adlife admits that it responded to MyWebGrocer on September 14, 2016. To the extent that MyWebGrocer endeavors to characterize the communication, Adlife denies the allegations in paragraph 15.

16. Adlife admits that MyWebGrocer, through its counsel, sent a letter on September 16, 2016. To the extent that MyWebGrocer endeavors to characterize the letter's contents, Adlife denies the allegations in paragraph 16.

17. Adlife admits the allegations in paragraph 17.

18. Adlife admits that it sent a Copyright Infringement Notice regarding the use of an image of a tuna salad sandwich (the "Tuna Sandwich Photograph") on September 19, 2016. Except as admitted above, Adlife lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore denies them. Adlife further answers that it owns the Tuna Sandwich Photograph, registered as part of a collection of images titled "ADLIFE-COLLECTION-091516" under Registration Number VA0002017741.

19. Adlife admits that on November 1, 2016, it identified three additional images owned by Adlife that MyWebGrocer had used without permission. Adlife admits that these images were an image of a turkey and ham wrap (the "Turkey Wrap Photograph"), an image of a sausage and pasta dish (the "Sausage Pasta Photograph"), and an image of pork ribs (the "Pork Rib Photograph"). To the extent that MyWebGrocer endeavors to characterize the communication, Adlife denies the allegations in paragraph 19. Adlife further answers that it owns each of the aforementioned images, and that the Turkey Wrap Photograph is registered as part of a collection of images titled "ADLIFE-COLLECTION-091516" under Registration Number VA0002017741; the Sausage Pasta Photograph is registered as part of a collection of images titled "ADLIFE-COLLECTION-101216" under Registration Number VA0002019921; and the Pork Rib photograph is registered as part of a collection of images titled "ADLIFE-COLLECTION-101916-K" under Registration Number VA0002020735.

20. Adlife admits that on November 2, counsel for MyWebGrocer requested Certificates of Registration and corresponding deposit materials for each of the Accused Images. Except as admitted above, Adlife denies the allegations in paragraph 20. Further answering, Adlife supplied Certificates of Registration and corresponding deposit material to MyWebGrocer subsequent to the filing of this Complaint.

21. Adlife denies the allegations in paragraph 21.

22. Adlife denies the allegations in paragraph 22.

23. Adlife admits that on November 8, it sent an email to counsel for MyWebGrocer. To the extent that MyWebGrocer endeavors to characterize its contents, Adlife denies the allegations in paragraph 23.

24. Adlife admits that on November 18, it sent an email to counsel for MyWebGrocer. To the extent that MyWebGrocer endeavors to characterize its contents, Adlife denies the allegations in paragraph 24.

25. Adlife admits the allegations in paragraph 25 except to the extent that MyWebGrocer seeks to characterize Adlife's ownership and copyrights to its photographs by using the term "purports to own."

26. Adlife admits that it sends notices to certain third parties it identifies as using Adlife's copyrighted materials and otherwise denies the allegations in paragraph 26.

27. Adlife denies the allegations in paragraph 27.

28. Adlife admits that it has filed lawsuits in the District of Massachusetts against third parties alleging copyright infringement and otherwise denies the allegations in paragraph 28.

29. This paragraph contains allegations to which no response is required. To the extent a response is required, Adlife incorporates by reference its responses to paragraphs 1-28.

## COUNT I
## Declaratory Judgment of No Copyright Infringement

30. The allegations in paragraph 30 set forth legal conclusions to which no response is required. To the extent that a response is required, Adlife admits the allegations in paragraph 30.

31. The allegations in paragraph 31 set forth legal conclusions to which no response is required. To the extent that a response is required, Adlife denies the allegations in paragraph 31.

32. The allegations in paragraph 32 set forth legal conclusions to which no response is required. To the extent that a response is required, **Adlife** denies the allegations in paragraph 32.

33. The allegations in paragraph 33 set forth legal conclusions to which no response is required. To the extent that a response is required, **Adlife** denies the allegations in paragraph 33.

34. The allegations in paragraph 34 set forth legal conclusions and request relief from the Court to which no response is required. To the extent that a response is required, Adlife denies the allegations in paragraph 34.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim that there is a justiciable controversy as to whether the Accused Images infringe any valid and enforceable copyright owned by Adlife fails, because Adlife possesses and has provided Certificates of Registration and deposit material for each of the images.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by the doctrine of unjust enrichment.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part to the extent Plaintiff seeks to have the court issue an order on behalf of MyWebGrocer customers who are not parties to the action.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Adlife demands trial by jury on all claims so properly triable.

## COUNTERCLAIM

Counterclaim Plaintiff Adlife for its Counterclaim against Counterclaim Defendant MyWebGrocer states as follows:

### Nature of the Action

1. By this action, Adlife seeks to enforce its rights as copyright holder of certain photographs of food items that were included on supermarket websites without appropriate permission. For over twenty years, Adlife has been in the business of creating product circulars for various grocers in the United States. As part of that business, Adlife photographed food items for inclusion in the circulars. Over an approximately twenty year period, Adlife has, at considerable time, effort and expense, created a library of approximately 25,000 images of food items. Adlife currently offers those images through a website it owns called PreparedFoodPhotos.com. Adlife has registered copyrights on the five (5) images currently at issue in this dispute.

2. Upon information and belief, MyWebGrocer is in the business of providing e-commerce support for grocers. According to its own website, this support includes, among other things, distribution and management of images of products grocers put on their websites. Upon information and belief, as part of that service, MyWebGrocer supplied to certain of its customer grocery stores the five (5) Adlife images at issue here. Those grocers, in turn, published those images on their websites.

3. After Adlife notified the grocery stores using the first image identified, the Brisket Photograph, of Adlife's rights to the image, MyWebGrocer contacted Adlife regarding the image and admitted that MyWebGrocer was the entity that had supplied the Adlife image to the grocery stores. Adlife had not provided to MyWebGrocer a license to use and distribute the

image in the way that MyWebGrocer used and distributed the image. MyWebGrocer claimed that it had acquired the rights to use the image from an entity that it had acquired in 2003 called NeXpansion, Inc. ("NeXpansion"). In a good faith effort to resolve the dispute, Adlife requested that MyWebGrocer provide evidence that MyWebGrocer had rights to use and distribute the Brisket Photograph and four (4) other subsequently identified images in the manner in which it had done with the grocers.

4. As discussed in more detail below with respect to the five (5) images, MyWebGrocer has, to date, only been able to provide possible licensing of the photos for two (2) of the images. In both cases, the possible licensing information provided post-dates MyWebGrocer's acquisition of NeXpansion by a period of years. With regard to the Brisket Photograph, this is contrary to both MyWebGrocer's representations to Adlife and the allegations set forth in paragraph 11 of the Complaint filed by MyWebGrocer. As to the remaining three (3) images, MyWebGrocer has not provided Adlife with evidence showing that MyWebGrocer has acquired the rights from any other source to use the images in the manner in which it used Adlife's images.

5. Adlife is currently researching whether it is possible that any of the three (3) remaining images were licensed to other entities through which MyWebGrocer could have obtained a license. Although in the past Adlife has provided limited licenses to certain images to third party distributors, as to at least one (1) of the three (3) images, Adlife has not provided such a license to a third party distributor. At this time, Adlife, therefore, seeks to enforce its rights as copyright holder in the one (1) image to which it has not provided a license to third party distributors pursuant to the Copyright Act of the United States, 17 U.S.C. § 101 et seq. Adlife

seeks damages for the past infringement and injunctive relief prohibiting MyWebGrocer from further infringing on Adlife's copyrighted works.

6.  With regard to the other four (4) images at issue, Adlife is working to determine to what extent, if at all, MyWebGrocer could have obtained a valid license to use the images as it has. Adlife is bringing this counterclaim in this form now because MyWebGrocer has refused a request for additional time to evaluate MyWebGrocer's claim to have licenses.

## Parties

7.  Adlife is a Rhode Island corporation. Adlife's principal place of business is at 38 Church St., Pawtucket, Rhode Island.

8.  Upon information and belief, MyWebGrocer is a Vermont corporation with its principal place of business at 20 Winooski Falls Way, Winooski, Vermont 05404.

## Jurisdiction and Venue

9.  This court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. Personal jurisdiction exists over MyWebGrocer because, among other things, it is domiciled in Vermont.

11. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

## General Allegations

12. As discussed above, Adlife has been in the business of providing printed circulars to grocery stores for over twenty years. Those circulars, which typically are distributed weekly to grocers, contain images of food items, most of which Adlife (and its predecessors) created. Over time, Adlife created a library of approximately 25,000 food images. Adlife currently

makes many of those images available through a website it owns called PreparedFoodPhotos.com, which is a subscription service.

13. Adlife has registered, and continues to register, certain collections of those images with the U.S. Copyright Office. Included in those registrations are the following images:

    a. The Brisket Photograph: registered under the title "BeefBrisket001" as part of a collection titled "ADLIFE Collection 073116" with the Registration Number VA0002012581, effective August 5, 2016.

    b. The Tuna Sandwich Photograph: registered under the title "SandwichTunaSalad001" as part of a collection titled "ADLIFE-COLLECTION-091516" with the Registration Number VA0002017741, effective September 20, 2016.

    c. The Turkey Wrap Photograph: registered under the title "WrapTurkeyHam001" as part of a collection titled "ADLIFE-COLLECTION-091516" with the Registration Number VA0002017741, effective September 20, 2016.

    d. The Sausage Pasta Photograph: registered under the title "SausagePasta001" as part of a collection titled "ADLIFE-COLLECTION-101216" with the Registration Number VA0002019921, effective October 14, 2016.

    e. The Pork Rib Photograph: registered under the title "PorkRibBabyBack006" as part of a collection titled "ADLIFE-COLLECTION-101916-K" with the Registration Number VA0002020735, effective October 23, 2016.

14. As discussed above, upon information and belief, MyWebGrocer is in the business of providing ecommerce support for grocers. According to MyWebGrocer's website, this includes overall creation and management of grocers' ecommerce needs (e.g., online platforms for customers to view and order groceries). More specifically, MyWebGrocer allows grocers "to capitalize on the digital grocery market opportunity with the only complete Digital Experience Platform." As described on MyWebGrocer's website, this platform is a "completely

integrated" and "[r]eady out of the box" digital platform that can be both "modular" and "customizable" for grocers to "attract, engage, transact with and retain [] shoppers."

15. As described on its website, MyWebGrocer supplies image management as part of the Digital Experience Platform. Upon information and belief, the Digital Experience Platform, as described on MyWebGrocer's own website, includes the use of templates upon which the images are loaded and then displayed on the grocers' websites.

16. In 2016, Adlife identified each of these five (5) images as appearing on grocers' websites. MyWebGrocer and Adlife eventually communicated regarding the images. MyWebGrocer denied infringement and claimed it had acquired the rights, at least to the Brisket Photograph, through the acquisition of NeXpansion in 2003.

17. Eventually, following the filing of this lawsuit, Adlife, through counsel, requested evidence from MyWebGrocer, through counsel, that MyWebGrocer had acquired a license to use the images. MyWebGrocer, though counsel, provided a communication purporting to show that MyWebGrocer had acquired a license from iStock, which is part of Getty Images, for two of the images – the Brisket Photograph and the Tuna Sandwich Photograph. MyWebGrocer has, thus far, been unable to provide evidence of a license to any of the other three (3) images.

18. Adlife has, in the past, provided certain of its images to iStock. Adlife has also provided certain of its images to another entity, MultiAd, which is now known as Creative Outlet.

19. Since the filing of the Declaratory Judgment Action, wherein MyWebGrocer claims that it has acquired the rights to at least one (1) of the images from NeXpansion, Adlife

has undertaken efforts to determine whether any of the images may have been licensed to NeXpansion or MyWebGrocer. This process is ongoing.

20. At this point, however, Adlife has been unable to locate a license agreement of any kind with NeXpansion or MyWebGrocer with respect to three (3) of the images. Moreover, MyWebGrocer has not provided evidence of such a license agreement with Adlife. In addition, Adlife has determined that at least one of the images, the Pork Rib Photograph, was not provided to either iStock or MultiAd, so no rights could have passed to NeXpansion or MyWebGrocer directly or indirectly through those entities.

## COUNT I

21. Adlife hereby incorporates and repeats the allegations contained in paragraphs 1-20 as if fully set forth herein.

22. Through its conduct, MyWebGrocer has infringed Adlife's copyright in the Pork Rib Photograph in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

23. As a direct and proximate result of such infringement, Adlife is entitled to damages, including statutory damages if appropriate, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Adlife prays for relief as follows:

1. Entry of judgment finding that MyWebGrocer has infringed Adlife's copyrighted image, the Pork Rib Photograph.

2. Enjoining MyWebGrocer from further acts of infringement of Adlife's copyrighted works.

3. Awarding Adlife such damages in an amount appropriate under the circumstances.

4. Awarding Adlife its costs and reasonable attorney's fees incurred as a result of this action.

5. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Adlife demands trial by jury on all claims so properly triable.

Respectfully submitted,

Adlife Marketing & Communications Co., Inc.

By its attorneys:

/s/ Gregory P. Howard
Gregory P. Howard
Donovan O'Connor & Dodig, LLP
116 South Street
Bennington, VT 05201
(802) 442-3233
gph@docatty.com

Jack W. Pirozzolo (*Pro hac vice forthcoming*)
Kenyon D. Colli (*Pro hac vice forthcoming*)
Sidley Austin LLP
60 State Street
36th Floor
Boston, MA 02109
(617) 223-0304
jpirozzolo@sidley.com

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 6, 2017.

<i>/s/ Gregory P. Howard</i>

GPH:jnn