U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 FEB 23 PM 3: 27

CLERK

BY _____ HBC
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MyWebGrocer, Inc. | ) |
| | ) Civil Action No. 5:16-cv-00310-gwc |
| Plaintiff | ) |
| | ) FIRST AMENDED COMPLAINT FOR |
| v. | ) DECLARATORY JUDGMENT AND |
| | ) VIOLATION OF CONSUMER |
| | ) PROTECTION ACT |
| Adlife Marketing & | ) |
| Communications Co., Inc.. | ) |
| | ) DEMAND FOR JURY TRIAL |
| Defendant | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff MyWebGrocer, Inc. ("MyWebGrocer"), for its Complaint against Defendant Adlife Marketing & Communications Co., Inc. ("Adlife") alleges as follows:

### Nature of Action

1.   MyWebGrocer seeks a declaratory judgment that MyWebGrocer and its customers are not liable to Adlife for infringement of copyright law and, in the alternative, declaration of appropriate copyright remedies under the U.S. Copyright Act, 17 U.S.C. § 106; a preliminary and permanent injunction under the Vermont Consumer Protection Act, 9 V.S.A. §2451, *et seq.* enjoining Adlife from engaging in unfair and deceptive trade practices; and an award of damages, attorneys' fees and costs.

### Parties

2.   Plaintiff MyWebGrocer is a corporation organized and existing under the laws of Vermont, with a principal place of business at 20 Winooski Falls Way, Winooski, Vermont 05404.

3.   Defendant Adlife is a Rhode Island corporation with a principal place of

Downs
Rachlin
Martin PLLC

business at 38 Church St., Pawtucket, Rhode Island.

## Jurisdiction and Venue

4. The Court has jurisdiction under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and under the laws of the United States concerning actions relating to copyright, 28 U.S.C. § 1338(a).

5. This Court has supplemental jurisdiction of the count based on Vermont law pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

7. This Court has personal jurisdiction over Adlife because Adlife conducts business transactions in this State. Adlife also solicited a copyright license agreement with MyWebGrocer in this State.

## Facts

8. MyWebGrocer creates digital platforms for grocery stores, including developing, hosting, maintaining and optimizing e-commerce websites.

9. The websites that MyWebGrocer develops for its retailer customers frequently use photographs of prepared food, which it licenses from various parties.

10. One such image used by MyWebGrocer depicted a prepared plate of brisket with roasted vegetables (the "Brisket Photograph").

11. On or about July 21, 2016, one of MyWebGrocer's customers received three Copyright Infringement Notices ("Notices") regarding the Brisket Photograph, each attaching an "Invoice" in the amount of $8,000 for "Willful Photography Copyright Infringement." Copies of these Notices, which were forwarded to MyWebGrocer, are attached as Exhibit A.

12. Upon receiving the Notices, MyWebGrocer researched the Brisket Photograph.

This research revealed that MyWebGrocer had likely obtained rights in the Brisket Photograph as a result of an acquisition of certain business assets from a company called NeXpansion, Inc. in 2003.

13. On August 19, 2016, MyWebGrocer conveyed this to Adlife via email and asked for evidence supporting Adlife's claim of ownership of the Brisket Photograph. On the same day, MyWebGrocer took the Brisket Photograph down pending a resolution of the dispute.

14. On September 9, 2016, Adlife claimed ownership of Copyright Registration No. VA0002012581, which is a group registration dated August 5, 2016 for 135 photographs created in 1999, without proof that said registration actually covered the Brisket Photograph in question.

15. On September 14, 2016, having still not received adequate proof of ownership in the form a Copyright Registration Certificate and a copy of the corresponding deposit material submitted to the U.S. Copyright Office, MyWebGrocer sent a letter reiterating its request for such proof. MyWebGrocer also asked for a list of all licenses granted between 1999-2003 for the photograph, so it could try to determine where NeXpansion, Inc. may have obtained the image. A copy of this letter is attached as Exhibit B.

16. Adlife responded on September 14, 2016, claiming it had provided "copyright information" to MyWebGrocer already, and stating that it was "processing further instances" of infringement. Adlife threatened to contact MyWebGrocer customers directly if MyWebGrocer did not "work with" Adlife. Adlife did not respond to MyWebGrocer's request for information about licenses it had granted for the Brisket Photograph or the additional images now at issue.

17. On September 16, 2016, through counsel, MyWebGrocer reiterated its request for information needed to assess the validity of Adlife's copyright infringement claim, including

the Certificate of Registration together with the deposit material included in the underlying copyright application and a list of licensees. MyWebGrocer also asked for a complete list of images Adlife believes MyWebGrocer has infringed or is currently infringing.

18. On September 19, 2016, during a call with MyWebGrocer's counsel, Adlife agreed to provide MyWebGrocer with the Certificate of Registration, together with the deposit material, for each photo it believed MyWebGrocer has used without permission or license.

19. On or about September 19, 2016, unbeknownst to MyWebGrocer, a second MyWebGrocer customer received a Copyright Infringement Notice ("Second Notice") regarding an image of a tuna salad sandwich (the "Tuna Sandwich Photograph"), and attaching an "Invoice" in the amount of $8,000 for "Willful Photography Copyright Infringement." A copy of the Second Notice, which was later forwarded to MyWebGrocer, is attached as Exhibit C.

20. On November 1, 2016, Adlife sent counsel for MyWebGrocer three additional images alleged to be owned by Adlife and allegedly used without permission or license, specifically: an image of a turkey and ham wrap (the "Turkey Wrap Photograph"), an image of a prepared sausage and pasta dish (the "Sausage Pasta Photograph"), and an image of pork ribs (the "Pork Rib Photograph"). These images together with the Brisket Photograph and the Tuna Sandwich Photograph are collectively referred to as the "Accused Images."

21. On November 2, counsel for MyWebGrocer requested that Adlife provide Certificates of Registration and corresponding deposit materials for each of the Accused Images. Counsel for MyWebGrocer also reiterated the request for the licensing information pertaining to the Accused Images. MyWebGrocer explained that this information was needed to research the source of the images.

22. Although further correspondence was exchanged, the negotiations reached an

impasse when Adlife insisted that MyWebGrocer make a damages payment of $7,500 and enter into a license going forward with Adlife covering all of Adlife's prepared foods images database, for a minimum term of 36 months at a cost of $999 per month.

23. MyWebGrocer estimates that it could pay $10 per image, if not significantly less ("Market Value"), for a perpetual license for each of the Accused Images.

24. On November 8, following the breakdown in negotiations, Adlife stated in an email to counsel for MyWebGrocer that the file would be turned over to "Jack Pirizzollo of Sidley Austin," who would handle the case, and further stated that "this is likely to become something much larger very quickly." A redacted copy of this email correspondence exchange is attached as Exhibit D.

25. On November 18, Adlife sent an email to counsel for MyWebGrocer stating that it "is clear to Adlife now these images are now and always were without proper licensing." Adlife further stated that it would pursue the willful infringement claims individually one retailer at a time." A redacted copy of this email correspondence exchange is attached as Exhibit E.

26. Also on November 18, in response to Adlife's threats to sue MyWebGrocer and its customers for willful copyright infringement, MyWebGrocer filed its complaint seeking a declaration of noninfringement or, in the alternative, a declaration of appropriate copyright remedies.

27. Since filing the complaint, MyWebGrocer has continued to research the source of the Accused Images. On or around November 23, MyWebGrocer contacted iStock to determine whether it may have licensed use of any of the Accused Images to NeXpansion prior to 2003.

28. On November 28, iStock informed MyWebGrocer that it had located licenses

to two of the images, the Brisket Photograph and the Tuna Sandwich Photograph. These images did not appear in MyWebGrocer's iStock download history. It was not until MyWebGrocer contacted iStock's customer service department that it was able to locate perpetual licenses to two of the Accused Images.

29. On December 1, MyWebGrocer informed Adlife, through counsel, that it had proof that it had acquired perpetual licenses from iStock to two of the Accused Images. MyWebGrocer asked again for a list of every licensee to whom Adlife had licensed the other three photographs.

30. On December 12, Adlife provided copyright registration certificates and corresponding deposit materials for the Accused Images. Adlife did not respond to MyWebGrocer's request for information about its licensees.

31. On December 13, MyWebGrocer provided proof to Adlife pertaining to the iStock licenses for the Brisket Photograph and the Tuna Sandwich Photograph. MyWebGrocer also reiterated its request for a list of all parties to whom Adlife has licensed its photographs.

32. On February 6, Adlife informed MyWebGrocer for the first time, as part of its response to MyWebGrocer's complaint, that it has "in the past" provided its images to iStock as well as to another entity now known as Creative Outlet.

33. On information and belief, Adlife tracks the use by third parties of images it allegedly owns using a computerized image matching system, and sends a copyright infringement notice along with an "Invoice" to any third party it discovers using its photographs. On information and belief, these notices are substantially the same in form and content to the notices attached as Exhibits A and C (hereinafter, "Adlife Invoices").

34. On information and belief, the Adlife Invoices state that the $8,000 is "due on

6

receipt" to Adlife for "Willful Photography Copyright Infringement." The cover letter accompanying the Adlife Invoices state that the "sole purpose" of any conversation with Adlife regarding the invoice "will be limited to why this is not a willful infraction and/or how the individual or company intends to pay this amount." The Adlife Invoices do not request that recipients identify any applicable licenses, or otherwise inform them that they may not be liable for copyright infringement if the photographs were used under a valid license.

35. On information and belief, Adlife intentionally concealed the fact that it has licensed its images in the past, including to iStock. Not only was there no mention of a potential license in any of the Adlife Invoices sent to MyWebGrocer's customers, Adlife failed to provide this information in response to MyWebGrocer's specific requests, the first of which was made on September 14, 2016.

36. On information and belief, Adlife is aware that when MyWebGrocer and other recipients of Adlife Invoices search their iStock download history, proofs of purchase for Adlife images will not appear because the images have since been deleted from iStock.

37. On information and belief, Adlife sends Adlife Invoices to any party not identified as having an Adlife license in its system with the knowledge that a large number of recipients likely own valid licenses to the image from iStock or other third parties.

38. The above allegations are incorporated in the claims below.

## COUNT I
### Declaratory Judgment of No Copyright Infringement

39. MyWebGrocer has a reasonable apprehension of suit by Adlife alleging copyright infringement.

40. There is a substantial and continuing justiciable controversy between MyWebGrocer and Adlife as to Adlife's right to threaten or maintain suit for infringement of the

Accused Images by Adlife or its customers, as to the validity, enforceability and scope of the alleged copyright in the Accused Images, and to whether the Accused Images as used by MyWebGrocer or its customers infringes any valid and enforceable rights owned by Adlife.

41. Upon information and belief, the Accused Images as used by MyWebGrocer do not infringe any valid and enforceable copyright owned by Adlife.

42. In the alternative, if MyWebGrocer's use of the Accused Images does infringe any copyright owned by Adlife, MyWebGrocer's use was not willful and remedies for such use should not exceed Market Value.

43. The Court should issue a declaratory judgment stating that Adlife is without right or authority to threaten or to maintain suit against MyWebGrocer or its customers for alleged copyright infringement, that no valid and enforceable copyright is infringed by MyWebGrocer or its customers based on its use of the Accused Images, or if infringement is found, it was not willful and any remedy should not exceed Market Value.

## COUNT II
### Violation of Consumer Protection Statute

44. The Vermont Consumer Protection Statute, 9 V.S.A. §2451, *et seq*. (the "VCPA") declares in § 2453 that "unfair or deceptive acts or practices in commerce" are unlawful.

45. MyWebGrocer is a "consumer" as that term is used in the VCPA.

46. Adlife is a "seller" of "goods" and/or "services" in commerce, as those terms are used in the VCPA.

47. Adlife's practice of utilizing a computerized image matching system to send invoices demanding payment of $8,000 for "willful" copyright infringement, with the knowledge that a large number of recipients likely own valid licenses to use the images, while intentionally

8

omitting this fact from the Adlife Invoices and/or intentionally withholding information regarding previous licenses to iStock and other third parties during subsequent communications regarding payment of the invoices, constitutes an unfair or deceptive act or practice in commerce.

48. Adlife's misrepresentations, intentional practices and/or omissions as set forth were likely to mislead MyWebGrocer and similarly situated consumers, and did mislead MyWebGrocer.

49. MyWebGrocer interpreted the Adlife Invoices and Adlife's subsequent communications regarding payment reasonably under the circumstances.

50. Adlife's misrepresentations, intentional practices and/or omissions were likely to affect MyWebGrocer and any reasonable consumer's conduct and decisions with regard to responding to Adlife Invoices and did affect those decisions, to MyWebGrocer's detriment and damage.

51. Adlife's unfair and deceptive practices have caused actual damage to MyWebGrocer, including by requiring it to expend time and money to investigate and respond to the Adlife Invoices it received, and by damaging and/or threatening to damage its reputation with its customers.

52. Adlife's unfair and deceptive practices have damaged other individuals and businesses similarly situated to MyWebGrocer who received Adlife Invoices and/or similar demands from Adlife.

53. Unless enjoined, Adlife's unfair and deceptive practices will damage other individuals and businesses who receive Adlife Invoices and/or similar demands from Adlife.

## PRAYER FOR RELIEF

WHEREFORE, MyWebGrocer prays for relief as follows:

1) Entry of judgment that Adlife is without right or authority to threaten or to maintain suit against MyWebGrocer or its customers for alleged copyright infringement and that no valid and enforceable copyright is infringed by MyWebGrocer or its customers based on its use of the Accused Images, or if infringement is found, it was not willful and any remedy should not exceed Market Value per Accused Image found to be infringed;

2) Entry of a preliminary and permanent injunction enjoining Adlife, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Adlife from threatening MyWebGrocer or any of its agents, servants, employees, or customers with infringement litigation or charging any of them either verbally or in writing with copyright infringement;

3) Entry of a preliminary and permanent injunction enjoining Adlife, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Adlife from engaging in the unfair and deceptive practices alleged herein, including but not limited to sending Adlife Invoices or similar notices;

4) Entry of judgment for Statutory Damages under the VCPA;

5) Entry of judgment for costs and reasonable attorney fees incurred by MyWebGrocer; and

6) Such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury.

Dated at Burlington, Vermont this 23 day of February, 2017.

DOWNS RACHLIN MARTIN PLLC

_____
Cathleen E. Stadecker
cstadecker@drm.com
Peter B. Kunin
pkunin@drm.com
199 Main Street
PO Box 190
Burlington, VT 05402-0190
Phone: 802.863-2375
Fax: 802.862.7512

*Attorneys for Plaintiff, MyWebGrocer, Inc.*

17264220.3