Gregory P. Howard
Mathew K. Higbee (admitted *pro hac vice*)
Naomi M. Sarega (admitted *pro hac vice*)
HIGBEE & ASSOCIATES
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com
nsarega@higbeeassociates.com
*Attorneys for Defendant.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MyWebGrocer, Inc., | Case No. 5:16-cv-00310-gwc |
| Plaintiff, | **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE** |
| v. | |
| Adlife Marketing & Communications Co., Inc. | |
| Defendant. | |

Pursuant to Rule Local Rule 7(a)(5), Defendant, AdlifeMarketing & Communications Co, Inc. (hereinafter "Adlife") respectfully submit this memorandum in reply to the Plaintiff MyWebGrocer Inc. (hereinafter "Plaintiff")'s opposition to Defendant's anti-SLAPP motion to strike pending before the Court. The motion was filed with the Court on 8-22-17, and the Plaintiff's opposition was filed on 8-31-17. Rule 7(a)(5) permits the moving party to file a reply within 14 days of the memorandum in opposition.

*1. Reply to Arguments Regarding Timeliness*

Although Defendant was formerly represented by *pro hac* attorneys Jack Pirozzolo and Kenyon Colli, they were not granted admission for Defendant until 3-17-17 (Doc No. 15)—nearly a month after the First Amended Complaint was filed. And, just a little over 60 days

later, on 5-23-17, those attorneys both moved to withdraw as attorneys for Defendant, specifically due to Defendant's apparent dissatisfaction with their representation and desire to seek new counsel. (*See* Doc No. 22). It was not until 6-5-17 (the same time current *pro hac* counsel, Mr. Higbee, was admitted as replacement counsel). Under these circumstances—where Defendant was formerly represented by *pro hac* counsel for a very brief period of only (approximately) two month, and whose representation Defendant was apparently dissatisfied with—former counsel's decision to not file a timely anti-SLAPP motion on Defendant's behalf cannot justifiably be imputed to Defendant to result in a total waiver of the right to pursue the current motion. At the least, Defendant's untimeliness in filing the motion, because of the neglect of its former pro hac attorneys, was an excusable neglect.

Plaintiff's suggestion that Defendant (via its prior pro hac attorneys) somehow waived its right to file the current anti-SLAPP motion strike—by filing an Answer to the Amended Complaint without filing a 12(b)(6) motion to dismiss—is meritless. There is nothing in Vermont's anti-SLAPP statute that requires a party to first move to dismiss at or before the filing of an anti-SLAPP motion. The statute provides a party up to 60 days to file the motion after the operative complaint is filed, which may be further extended for "good cause". 12 V.S.A. \_\_\_. Additionally, as noted before, Defendant's former pro hac attorneys were not admitted as counsel for Defendant until 3-17-17, after the deadline for filing any pre-Answer motion to the First Amended Complaint had already passed. See Fed. R. Civ. P. 15(a)(3)("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."

Nor can the fact that Defendant has been represented by local counsel (Gregory Howard) be a basis to conclude that Defendant's untimely motion was inexcusable. As the docketed events in this action and the declaration(s) filed herewith clearly indicate, local counsel, Mr. Howard's involvement up to this point has been solely for the purpose of complying with provisions of the Local Rules of this Court requiring that any attorney admitted pro hac vice for a party "remain associated in the action with a member of the Bar of this court at all times". LR 83.1(b)(4). Here, while Mr. Howard has been defense counsel of record since early in the litigation, it is clear that legal decisions (such as whether and when to file a motion to strike) were previously made by Defendant's former pro hac attorney. In the affidavit Mr. Howard filed in support of their motion to withdraw, he specifically indicated that Defendant "has been represented in this matter by [pro hac attorneys Jack Pirozzolo and Kenyon Colli] of Sidney Austin" and that he (Mr. Howard) was merely "serving as local counsel". Doc. No. 22-1, ¶1.

The Vermont anti-SLAPP statute does not provide a definition of what constitutes "good cause". However, very recently, the Vermont Supreme Court interpreted the meaning of "good cause" within the context of a contract dispute where a default was entered against a defendant (pursuant to Rule 55 of the Vermont Rules of Civil Procedure) who failed to timely respond to the complaint. *Hermitage Inn Real Estate Holding Co., LLC v. Extreme Contracting, LLC*, 2017 VT 44, ¶¶ 3-4, 38-45. Rule 55 of the VRCP provides that a default may be set aside upon a showing of "good cause", but like the anti-SLAPP statute, it provides no meaning or definition of "good cause". *Id.* at ¶38-39.

//
//
//

Applying the Second Circuit's formula for determining "good cause" in that context, the Vermont Supreme Court indicated:

> The Second Circuit has adopted a three-part standard, balancing "whether the default was willful, whether the moving party has presented a meritorious defense, and whether setting aside the default would prejudice the party who secured the entry of default." *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984). We adopt that standard.

*Id.* at 39.

Applying that standard, the Vermont Supreme Court ruled there that there was good cause for setting aside the default. Among other things, the Vermont Supreme Court held that the plaintiff (the party arguing that good cause was lacking) had not shown that it suffered any prejudice in the defendant's failure to timely file an answer to the complaint, and it specifically held that the mere delay in the resolution of the litigation in itself does not constitute prejudice.

Here, even Defendant's anti-SLAPP motion could be considered untimely, Plaintiff has not at all demonstrated how the untimeliness of Defendant's motion has prejudiced Plaintiff in any way. If anything, Defendant's delay in filing the current motion is only helpful to the Plaintiff as it has given Plaintiff the opportunity to acquire more evidence from discovery to present in defense to an anti-SLAPP motion than it otherwise could have had Plaintiff filed the motion early in the litigation.

As Plaintiff's own authorities regarding "good cause" indicate, good cause exists where a delay was outside the control of the moving party. *See* Pltf's Memo in Oppos., p. 5 (citing George v. Prof. Disposables Int'l, Inc., 221 F. Supp.3d 428, 432 (S.D.N.Y. 2016); Tummino v. Hamburg, 260 F.R.D. 27, 38 (E.D.N.Y. 2009); Myers v. New York City Human Rights Comm'n, No. 04 Civ. 00543(JCF), 2006 WL 2053317, at *1 (S.D.N.Y. Jul. 21, 2006)). Here, Defendant's current pro hac counsel (Mathew Higbee) was not admitted in this case until 6-5-17. *See* Doc Nos. 24 & 26.) By then, the 60-day statutory deadline to file an anti-SLAPP motion to

the Plaintiff's First Amended Complaint had already passed; thus, at that point, it made little or no difference whether Mr. Higbee filed the current motion immediately, or waited 78 days later (on 8-22-17), before filing the motion. Mr. Higbee's delay, however, was evidently due to the neglect of former defense counsel and outside of his control.

Finally, Plaintiff's argument that Defendant's motion violates Local Rule 83.1(b)(4) lacks merit and should also be rejected. LR 83.1(b)(4) requires that local counsel "must sign all filings and attend all court proceedings." Here, although the actual pleading or motion itself was filed by counsel admitted *pro hac vice* (Mathew Higbe), the motion, memorandum, supporting declaration and exhibits that were filed on 8-22-17 (Doc No. 34) were filed by and under the electronic case filing account of local counsel for Defendant (Gregory Howard). The Administrative Procedures for Electronic Case Filing currently in effect specifically provide that an attorney's ECF login-in and passport "*shall serve as the user's signature for purposes of Fed.R.Civ.P.11 and for all other purposes* under the Federal Rules of Civil Procedure and the Local Rules of this Court." *See* Admin. Proc. For ECF, Section (J)(emphasis added).

Furthermore, Local Rule 83.1(b)(4)(C) specifically provides (and Plaintiff conveniently neglects to mention) that the Court "may waive the provision in (B) for good cause shown." Here, the fact that the current motion was filed by and under the an active ECF account and login of an attorney who is duly and permanently admitted to practice before this Court (Mr. Howard, who must be presumed to know and approve of the contents of the pleading and whose e-filing login and passport constitute his signature) was alone sufficient for purposes of compliance with LR 83.1(b)(4). But even if it does not strictly comply with that Rule, the same circumstances provide sufficient "good cause" for excuse from any strict compliance with the rule.

//

### *2. Reply to Arguments Regarding the Merits of Defendant's Motion*

With respect to the merits of Defendant's anti-SLAPP motion, Plaintiff incorrectly asserts that Defendant's motion "is supported solely with case law premised on California's interpretation of that state's own anti-SLAPP statute", which Plaintiff asserts "has been soundly rejected by the Vermont Supreme Court". Plt's Memo. in Oppos., p. 7. Plaintiff mischaracterizes and takes Defendant's arguments out of context. In doing so, Plaintiff also mischaracterizes the holding and applicability of the Vermont Supreme Court's decision in *Felis v. Downs Rachlin* on which it so heavily relies. *See Felis v. Downs Rachlin Martin*, 2015 VT 129 (2015).

In previously stating that the Vermont Supreme Court has not interpreted the state's anti-SLAPP statute, Defendant meant to say that the Vermont Supreme Court has not interpreted the statute as it applies to the facts and circumstances that are at issue in this lawsuit. As Plaintiff clearly recognized in its opposition, Defendant specifically cited (and thus, acknowledged the existence of) the *Felis* decision.

Contrary to Plaintiff's assertion, the Felis decision is not controlling. There, the Vermont Supreme Court was applying the anti-SLAPP statute in the context of a witness who was testifying in a private divorce. Specifically, the court held that an expert witness testimony for one of the parties (regarding the values of certain property that were subject to distribution in the divorce) was not protected under the anti-SLAPP statute because it involved a purely private matter and not "a matter of public significance". *Id.* at ¶53. The expert witness was not petitioning a court. As the court specifically indicated in that decision, it was the first time (since the statute was enacted in 2005) that the court was called on to address and apply the state's anti-SLAPP statute. *Id.* at ¶29.

Unlike here, the matter in *Felis* did not involve speech by someone who was involved in prelitigation or litigation speech made in anticipation of petitioning the court for relief. The parties there were two private individuals fighting over assets in a divorce. The defendant was not a petitioner or respondent. In contrast, the parties in this case involve multimillion-dollar corporations (like Plaintiff) who use to internet to reach out to (and profit from) millions if not billions of people over the internet. To appeal to large members of the public and entice them into purchasing its goods or services, or the goods or services of its business partners (such as Safeway and Albertson's) for whom it creates commercial websites, Plaintiff acquires and relies on visual photos, images and other creative works to build its advertising products. In the process of doing so, Plaintiff unlawfully uses images and other works that are duly-registered, copyrighted material.

Here, Plaintiff had infringed on Defendant's copyrighted materials on internet websites it had created and maintained for several of its business partners; this prompted Defendant to send the three copyright infringement notices (previously discussed at length) to those businesses. When a large corporate entity such as Plaintiff commits unlawful acts of copyright infringement, for commercial gain, in violation of federal law, such acts and the responses by the owners of the copyright owners whose works it infringed (such as Defendant), does not just affect the parties involved but can (and often do) affect the spending decisions and lives of millions of other consumers. Under these circumstances, it cannot be said that the actions or activities that gave rise to this lawsuit was not a matter of public concern.

//

//

//

Unlike here, in *Felis*, the testimony of the expert witness (regarding the value of the properties for distribution in the parties' divorce) concerned a private matter literally between only two parties, and the impact of the testimony had little or no effect on the general public. The same cannot be said here.

Additionally, the witness's testimony in *Felis* was made in the context of an ongoing private legal action and did not involve or implicate the long-recognized "litigation privilege doctrine" that has long been recognized in Vermont, predates the anti-SLAPP statute itself, and intended to protect the general public's constitutional right to access the courts.

In *Kollar v. Martin*, the Vermont Supreme Court reiterated that the litigation privilege doctrine in Vermont stems from the Vermont Constitution's protection of one's right to access the courts. 167 Vt. 592, 594 (Vt. Sup. Ct. 1997); *see also Jacobsen v. Garzo*, 149 Vt. 205, 209 (Vt. Sup. Ct. 1988)("[F]ree access to the courts is an essential right recognized by our state constitution.")(citing Vt. Const. ch. I, art. 4). In *Jacobsen*, the Vermont Supreme Court held, "as a matter of law, the filing of a lawsuit alone cannot constitute tortious interference with contractual relations." 149 Vt. at 209. In *Kollar*, the Vermont Supreme Court extended the litigation privilege to communications made both during the course of litigation *and* communications made before the filing of a lawsuit (such as threats to file suit). 149 Vt. at 194 ("We hold in this case that the threat of filing a lawsuit is similarly protected by our constitutional right to access the courts."); *see also* Restatement (Second) of Torts § 767 cmt. c, at 31 (instituting litigation or threatening to institute litigation must be done in bad faith to support a claim for contract interference); *id.* § 773 illus. 1 (a good faith threat to pursue legal proceedings is not improper).

//

## CONCLUSION

For the foregoing reasons, Defendant's motion should be granted as requested, and attorney's fees be awarded as provided under 19 V.S.A. §1041.

Dated: 09-14-17                     By its attorneys:

/s/ **Gregory P. Howard**
Gregory P. Howard
Donovan O'Connor & Dodig, LLP
116 South St.
Bennington, VT 05201
(802) 442-3233
gph@docatty.com
Mathew K. Higbee (admitted pro hac vice)
Naomi Sarega (admitted pro hac vice)
Higbee & Associates
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6559 facsimile
mhigbee@higbeeassociates.com
nsarega@higbeeassociates.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronically filing with the Clerk of the Court using CM/ECF on this **14th** day of **September, 2017**, on all counsel or parties of record on the service list below.

/s/ **Gregory P. Howard**
Gregory P. Howard, Esq.

## SERVICE LIST

Matthew S. Borick
mborick@drm.com
Cathleen E. Stadecker
cstadecker@drm.com
**DOWNS RACHLIN MARTIN, PLLC**
199 Main Street
P.O. Box 190
Burlington, VT 05402