Mathew K. Higbee (*Pro Hac Vice*)
Naomi Sarega (*Pro Hac Vice*)
HIGBEE & ASSOCIATES
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8352
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com
nsarega@higbeeassociates.com

Gregory P. Howard
DONOVAN O'CONNOR & DODIG
116 South St.,
Bennington, VT 05201
(802) 442-3233
gph@docatty.com
*Attorneys for Defendant/Counterclaim Plaintiff,*
*ADLIFE MARKETING*
*& COMMUNICATIONS CO., INC.,*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MYWEBGROCER, INC., | Civil Action No. 5:16-CV-00310-GWE |
| Plaintiff and Counterclaim Defendant, | |
| v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| ADLIFE MARKETING & COMMUNICATIONS CO., INC., | |
| Defendant and Counterclaim Plaintiff. | |

<u>**MEMORANDUM AND POINTS OF AUTHORITIES**</u>

## I.      Introduction

The Opposition filed by MyWebGrocer Inc. ("MyWebGrocer") is yet another remarkably less than transparent attempt to defame Adlife Marketing & Communications Co. Inc. ("Adlife") as a supposed "copyright troll;" no doubt as a smokescreen meant to distract from the Opposition's lack of a meritorious argument.

Contrary to the Opposition's baseless assertion, Adlife is no "troll." Courts have generally defined a "Copyright Troll" as a non-content producing person or entity whose business model exists solely of acquiring third-party intellectually property rights for purposes of asserting claims of dubious merit in order to procure settlements. *See Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 780 n.1 (E.D. Pa. 2013) (Defining "copyright troll" as a "a non-producer [of content] who merely has acquired the right to bring lawsuits against alleged infringers, and observing that "[m]any internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."); *see also Novelty Textile Inc. v. Wet Seal Inc.* 2014 WL 12603499, at \*4 (C.D. Cal. Oct. 22, 2014)(stating that copyright trolls "shak[e] Defendants down with claims that are not meritorious".); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 2014 WL 1724478, at \*8 (N.D. Cal. Apr. 29, 2014)(stating that labeling plaintiff as a copyright troll "unhelpful and slightly disingenuous" and observing that "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.")(quotation and citation omitted).

Quite the opposite of a "troll", Adlife is the creator and rights holder to a robust library of thousands of food photographs which it licenses on a subscription basis to major grocery retail chains across the country. Rather, Adlife finds itself in a no-win situation: either actively seek to protect its most valuable business asset thereby subjecting itself to the unfair label of "copyright troll," or simply stand idly by and allow rampant copyright infringement to slowly degrade and eventually destroy its business.

REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

It is highly ironic that MyWebGrocer would go to such great lengths to paint Adlife in a harsh light when it was MyWebGrocer who engaged in unabashed copyright infringement and then preemptively sued Adlife while admitting, in the pleadings no less, that it was unable to verify licenses prior to filing suit.[1] As part of its unmeritorious suit, MyWebGrocer alleged a claim against Adlife under 9 V.S.A. § 2451 *et seq.* for violation of the Vermont Consumer Protection statute ("VCPA") on the basis that, *inter alia*, Adlife's legitimate attempts to enforce its right somehow caused harm to MyWebGrocer and pose a danger to the consuming public.

As explained more fully below, MyWebGrocer cannot maintain its VCPA claim and judgment on the pleadings should be entered in favor of Adlife.

## II.     Standard of Review

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)(citing *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987)). The court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party, however, the court is not bound by the nonmoving party's legal characterizations of the facts. *National Fidelity Life Ins. Co.* 811 F.2d at 358.

Although employing the standard of review of a motion to dismiss, a motion for judgment on the pleadings results in the final disposition of the case if judgment is entered for the movant. *See* 5C Wright & Miller, *Federal Practice and Procedure Civil 3d* § 1369, 261 ("Both the summary judgment procedure and the motion for judgment on the pleadings are concerned with the substance of the parties' claims and defenses and are directed

---

[1] Adlife will also note that during the August 7, 2018 telephonic hearing the Court expressed some skepticism towards MyWebGrocer's allegations that it acquired licenses for some of the Accused Images through its purchase of NeXpansion.

towards a final judgment on the merits."); *see also Collins v. Bolton*, 287 F. Supp. 393, 396 (N.D. Ill. 1968) ("It is settled that a motion for a judgment on the pleadings is a motion for a judgment on the merits.").

To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In *Iqbal*, the Supreme Court suggested a "two-pronged approach" to evaluate the sufficiency of a complaint. *Iqbal*, 129 S. Ct. at 1949-50. A court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950; *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks and alteration omitted)). At the second step, a court should determine whether the "well-pleaded factual allegations," assumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Harris*, 572 F.3d at 72 ("Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (internal quotation marks and alteration omitted)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

In this case, the essential facts pled by MyWebGrocer to support its VCPA claim are undisputed, but do not give rise to a cognizable claim as a matter of law. Therefore judgment on the pleadings is appropriate in this case and should be entered in favor of Adlife.

## III.    MyWebGrocer Does Not Meet The Statutory Definition of a "Consumer"

A private right of action under the VCPA may only be brought by a "consumer." 9 V.S.A. § 2461(b). Section 2451a (a) of the VCPA defines "consumer," in pertinent part, as

anyone "who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business."

The Opposition's reliance on *Whitney v. Nature's Way Pest Control, Inc.,* 2016 WL 3683525, at \*2 (D. Vt., 2016) for the proposition that there need be "no contract or agreement between the parties" for MyWebGrocer to be considered a "consumer" is misplaced. *Whitney* stands for the proposition that the VCPA does not require direct *contractual privity* between the violator and the plaintiff. However, no case interpreting the VCPA has ever held that the VCPA applies in the complete absence of a consumer transaction, as is the case here.

In its 1981 decision in *Wilder v. Aetna Life & Casualty Insurance Co.,* the Vermont Supreme Court held that the VCPA did not provide a cause of action against an insurance company for withholding payment of a settlement to third parties following an automobile accident. *Wilder,* 433 A.2d at 310. The Court based its holding on two grounds; one, that the sale of an insurance policy was not a contract for goods or services under the then-existing definitions of those terms, and two, that no buyer and seller relationship existed between the plaintiffs and the defendant. *Ibid.* The Court held that the denial of insurance coverage, even if done in bad faith, was "one step removed" from the requisite consumer transaction required to confer standing under the VCPA. The Court also noted that under similar legislation "the 'unfair or deceptive acts or practices' portion of the act deal solely with consumer transactions in which there is an actual sale of goods or services involving a buyer, a seller, and the goods or services." *Ibid. quoting Bowe v. Eaton,* 17 Wash.App. 840, 846 (1977); *see also Elkins v. Microsoft Corp.,* 817 A.2d 9, 14 (Vt. 2002) ("[T]he *Wilder* alternative holding ... was that the plaintiff was not a purchaser of the alleged good or service at all, and ... was removed from the transaction that was needed to bring the transaction under § 2461(b)."); *Maurice v. Fed. Ins. Co.,* 2009 WL 10679101, at \*2 (D. Vt. 2009).

In this case, neither MyWebGrocer, nor any of its Retailers purchased, leased, contracted for, or otherwise agreed to pay consideration for any goods or services offered by Adlife in its

Correspondence or any subsequent communications as required under 9 V.S.A. 2451a (a). Indeed, the pleadings expressly state that MyWebGrocer rejected Adlife's offers to enter into a licensing agreement. FAC at ¶¶ 22-26. Thus, as the pleadings do not plausibly allege that MyWebGrocer or the Retailers who received Adlife's Correspondence consummated any transaction with Adlife to meet the statutory definition of "consumers."

Therefore, MyWebGrocer cannot bring a private action under the VCPA and judgment should be entered in favor of Adlife.

## IV.     MyWebGrocer Has Not Plausibly Alleged That It Was Damaged

9 V.S.A. § 2461(b), requires a "consumer" to show either (1) reliance on a deceptive act in contracting for goods or services, or (2) damages or injury from an unfair or deceptive act in order to bring a private right of action. If a plaintiff, in bringing a consumer fraud action, either fails to allege facts that meet the definitions of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to demonstrate the prerequisites to a private action under 9 V.S.A. § 2461(b), the case is properly dismissed. *Dernier v. Mortgage Network, Inc*., 195 Vt. 113 (2013).

The Opposition concedes that MyWebGrocer's claim is not premised on the "contracting in reliance" portion of the VCPA. Opposition at p. 10. Rather, MyWebGrocer contends that it the undisputed facts properly show that it suffered injury allegedly "due to Adlife's prohibited representations and practices." *Ibid.* The Opposition explicitly states that "MyWebGrocer alleged that it has suffered damages or injury as a result of Adlife's misrepresentations that MyWebGrocer and its customers willfully infringed prepared food images purportedly owned by Adlife." *Id.* at pp. 10-11. However, the pleadings never identify any representation that Adlife made about *MyWebGrocer*.

Rather, the pleadings state that the VCPA claim is expressly premised on the contents of the Correspondence and subsequent communications with the recipients, i.e. the Retailers:

> "Adlife's practice of utilizing a computerized image matching system to send invoices demanding payment of $8,000 for 'willful' copyright infringement, with the knowledge that a large number of recipients likely own valid licenses to use the images, while intentionally omitting this fact from the Adlife Invoices and/or intentionally withholding information regarding previous licenses to iStock and other third parties during

REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

subsequent communications regarding payment of the invoices, constitutes an unfair or deceptive act or practice in commerce."

FAC ¶ 47.

As the pleadings demonstrate, Adlife never sent or addressed any of its Correspondence to MyWebGrocer or to the state of Vermont, nor does any of the Correspondence mention MyWebGrocer at all. *See* FAC, Exhibits A, C. Indeed, it was apparent to Adlife that the Retailers themselves were engaging in infringing activity. Adlife did not state in the Correspondence that it was aware that MyWebGrocer was the Retailers' source for obtaining the Accused Images or that MyWebGrocer itself was engaging in infringing activity, and made no representations concerning MyWebGrocer. According to the pleadings, after the out of state Retailers received Adlife's Correspondence and forwarded it to MyWebGrocer, MyWebGrocer voluntarily made contact with Adlife and requested that it be provided with information concerning the Accused Images. MyWebGrocer never received any Correspondence from Adlife prior to voluntarily making contact. *Id.* at ¶¶ 11-13.

Additionally, the Opposition disingenuously states that "MyWebGrocer alleged that 'Adlife's unfair and deceptive practices have caused actual damage to MyWebGrocer, including by requiring it to expend time and money to investigate and respond to the Adlife Invoices it received, and by damaging and/or threatening to damage its reputation with its customers.'" Opposition p. 11, quoting FAC ¶ 51.

First, as previously stated, the Correspondence itself was never sent to MyWebGrocer directly, nor does it mention MyWebGrocer. MyWebGrocer attempts to down play the significance of its choice initiate contact with Adlife and purposefully inserting itself into the dispute between Adlife and the Retailers. Apparently unhappy with the outcome of that choice, MyWebGrocer now attempts to bootstrap a cause of action by preemptively filing a lawsuit and claiming that it was injured by having to expend time and incur legal fees in a dispute it initiated.

These self-inflicted "damages" cannot support a cause of action under the VCPA. Setting aside the fact that Adlife's infringement claims are meritorious, the mere fact that a party may disagree with legal claims asserted in a pre litigation communication and decide to hire counsel

to defend its interests does not amount to a cognizable "harm" sufficient to confer standing. If it did, then any person who responds to a pre litigation correspondence could then claim harm sufficient to bring a VCPA claim.

Second, other than the barebones conclusory language paragraph 51 the FAC does not allege that Adlife threatened to damage MyWebGrocer's reputation with its customers. Rather the FAC states that Adlife notified MyWebGrocer that it was processing additionally discovered infringements, and was considering "contact[ing] MyWebGrocer's customers directly" if it was unable to resolve the matter with MyWebGrocer. FAC ¶ 16. Since MyWebGrocer's customers, i.e. the Retailers, were the parties engaging in infringing use of Adlife's copyrighted works to begin with, the pleadings do not plausibly allege that Adlife would "damage" MyWebGrocer's reputation in any way by attempting to resolve Adlife's meritorious legal claims directly with the Retailers.

Regardless, the court is not required to consider as true the barebones conclusory allegation contained in paragraph 51 of the FAC. *See Iqbal*, 129 S. Ct. at 1950 (A court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *see also Harris*, 572 F.3d at 72.

Therefore, judgment should be entered in favor of Adlife and against MyWebGrocer because MyWebGrocer has not plausibly alleged that it was damaged.

**V.       The Pleadings Do Not Establish A Sufficient Nexus With The State Of Vermont**

In order for a plaintiff to state a claim under the VCPA, a plaintiff must show a sufficient nexus between the alleged conduct and the state of Vermont. *See Sherman v. Ben & Jerry's Franchising, Inc.,* 2009 U.S. Dist. LEXIS 72663, at *29 (D. Vt. Aug. 10, 2009); s*ee also Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206, 215 (E.D. Pa. 2000) ("State consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state.").

The Opposition posits that a sufficient nexus exists simply by virtue of the fact that MyWebGrocer is a Vermont corporation. Opposition pp. 13-14. While this fact is undisputed, as stated in section IV, *supra*, the pleadings do not allege any deceptive acts targeted towards

REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

MyWebGrocer or Vermont. Any alleged harm suffered by MyWebGrocer is a result of it voluntary actions and not the result of Adlife's conduct. The fact that MyWebGrocer is located in Vermont, standing alone, is insufficient to establish a nexus with Adlife's out of state conduct.

Therefore, judgment should be entered in favor of Adlife and against MyWebGrocer.

## VI.     Any Allegedly Deceptive Act Did Not Take Place "In Commerce"

The Supreme Court of Vermont has expressly held that the "in commerce" requirement narrows the VCPA's application to prohibit only unfair or deceptive acts or practices that occur in the consumer marketplace. *Foti Fuels, Inc. v. Kurrle Corp.*, 195 Vt. 524, 536 (2013). To be considered "in commerce," the transaction must take place "in the context of [an] ongoing business in which the defendant holds himself out to the public." *Ibid* (citation omitted). Further, the practice must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general. *Ibid.* By contrast, transactions resulting not from "the conduct of any trade or business" but rather from "private negotiations between two individual parties who have countervailing rights and liabilities established under common law principles of contract, tort and property law" remain beyond the purview of the statute. *Ibid.*

Ironically, only two pages after complaining that "it is inappropriate for Adlife to refer to or make assertions regarding material outside the pleadings" (Opp. p. 17), the Opposition once again attempts to defame Adlife as a supposed "copyright troll" by referring extensively to sources well outside the pleadings and completely irrelevant to the merits of this Motion or the case as a whole. The Opposition attempts to justify its lazy *ad hominem* attacks by arguing that Adlife's supposed "copyright trolling" some how inexplicably places Adlife's private efforts to settle an infringement claim into "commerce."

Here, Adlife's conduct towards the Retailers and MyWebGrocer does not constitute a transaction "in commerce" for VCPA purposes because it did not occur in the consumer marketplace. As the pleadings show, Adlife privately directed its Correspondence and settlement offers to the Retailers initially, and subsequently MyWebGrocer after MyWebGrocer made voluntary contact and requested that information. FAC, Exhibit A, C. None of the conduct

alleged in the pleadings was directed to the public at large. Rather, Correspondence was sent only after Adlife determined that a Retailer had used one of more of its Images and appeared to not have purchased a license.

As explained in section III, *supra,* the pleadings do not allege that any transaction took place between Adlife or MyWebGrocer or any other entity. The consummation of a transaction is a required to state a claim under the VCPA. *See Foti Fuels, Inc.,* 195 Vt. at 535 ("[T]he fact that the Legislature created broad categories of potential plaintiffs and defendants does not eliminate the threshold inquiry of whether the *transaction* was "in commerce." [emphasis added]). Here, as the pleadings show that no transaction occurred at all, none of the alleged conduct took place "in commerce." Even if a transaction did occur, it did not involve products, goods or services purchased or sold for general consumption, as those terms are generally understood, but rather the settlement of legal claims between private parties.

Because no transaction took place in commerce and Adlife's conduct as alleged in the pleadings related to the private settlement of legal claims rather than a transaction involving products, goods, or services sold for general consumption to the public at large, judgment should be entered in favor of Adlife and against MyWebGrocer.

## VII. MyWebGrocer Should Not Be Granted Leave To Amend

As a final "Hail Mary," MyWebGrocer requests leave to amend its VCPA claim despite the fact that its FAC was filed well over 18 and a half months ago. However, leave to amend is not appropriate where, as here, the request is solely in anticipation of an adverse ruling. *See Dellefave v. Access Temporaries, Inc.*, 2001 WL 25745, at *9 (S.D.N.Y. Jan. 10, 2001)(collecting cases); *aff'd,* 37 F. App'x 23, 27 (2d Cir. 2002) ("DelleFave's only explanation for the [2 year] delay is that he [requested leave to amend] shortly after Druzkiako had moved for judgment on the pleadings, and it was not until then that he had reason to believe that an amendment was necessary. As the District Court found, this explanation only confirms that DelleFave's motive was dilatory.")

Additionally, MyWebGrocer's request ignores the fact that Adlife is not simply

requesting a dismissal of the VCPA claim, but rather entry of judgment in Adlife's favor. *See Collins*, 287 F. Supp. at 396 ("It is settled that a motion for a judgment on the pleadings is a motion for a judgment on the merits.").

In any event, "[i]t is well established that leave to amend need not be granted ... where the proposed amendment would be futile." *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (internal quotation marks and alterations omitted). MyWebGrocer contends that deposition testimony from Adlife officers allegedly "corroborates, in large measure, MyWebGrocer's allegations." Opposition p. 24. Even if MyWebGrocer's self-serving assessment is accurate, it does not account for the fact that the allegations themselves fail to establish a VCPA claim as a matter of law, regardless of whether or not they are corroborated by extrinsic evidence.

Thus, even if MyWebGrocer were allowed to amend its pleadings, the amendment would be futile. Therefore judgment should be entered in favor of Adlife and against MyWebGrocer.

## VIII. Conclusion

In conclusion, Adlife respectfully requests that the Court enter judgment on the pleadings for Adlife and against MyWebGrocer on its VCPA claim.

Dated: September 13, 2018

Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, Esq.
Naomi M. Sarega, Esq.
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8349
mhigbee@higbeeassociates.com
nsarega@higbeeassociates.com

**/s/ Gregory P. Howard**
Gregory P. Howard
**Donovan O'Connor & Dodig, LLP**
116 South St.
Bennington, VT 05201
(802) 442-3233
gph@docatty.com

REPLY IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronically filing with the Clerk of the Court using CM/ECF on this **13th** day of **September, 2018**, on all counsel or parties of record on the service list below.


**/s/ Mathew K. Higbee**
Mathew K. Higbee



## SERVICE LIST

Matthew S. Borick
mborick@drm.com
Cathleen E. Stadecker
cstadecker@drm.com
Peter Kunin
pkunin@drm.com
**DOWNS RACHLIN MARTIN, PLLC**
199 Main Street
P.O. Box 190
Burlington, VT 05402