U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2019 FEB -4 PM 1:50
CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MYWEBGROCER, INC.,

    Plaintiff,

v.

ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Defendant.

Case No. 5:16-cv-310

**DECISION ON DEFENDANT'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS
(Doc. 64)**

Plaintiff MyWebGrocer, Inc., a corporation that develops and maintains websites for grocery stores, initiated this suit after several of its customers received copyright infringement notices from defendant Adlife Marketing & Communications Co., Inc. (Doc. 10 ¶ 3.) Plaintiff alleges that defendant is engaged in "copyright trolling."[1] (*See* Doc. 65 at 1–8.) Plaintiff seeks a declaratory judgment that it has not infringed on defendant's copyright or, if infringement is found, that any infringement was accidental and any remedy should not exceed the value of any protected images. (Doc. 10 ¶ 1.) Plaintiff has also filed a claim for treble damages and attorney's fees under Vermont's Consumer Protection Act, 9 V.S.A. § 2451, *et seq.* ("VCPA"). (*Id.*)

---

[1] Copyright trolling refers to a practice of "bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017).

1

Defendant has filed a motion for partial summary judgment. (Doc. 64.) It seeks judgment in its favor as a matter of law on Plaintiff's VCPA claim, arguing that Plaintiff lacks standing because the CPA does not cover commercial disputes between entities such as these parties. (*See* Doc. 65 at 8–9.) Plaintiff responds that it qualifies as a "consumer" for purposes of the VCPA and that the alleged conduct of the defendant is covered by the VCPA. (Doc. 75 at 11–13.)

## FACTS

The court draws the following account of the facts from the First Amended Complaint ("FAC"). (Doc. 10.)

Plaintiff is a corporation with its principal place of business in Winooski, Vermont. (*Id.* ¶ 1.) It is engaged in the business of creating and maintaining websites for its customers who are retail grocery stores. (*Id.* ¶¶ 2, 8.) Plaintiff frequently uses photographs of prepared food as illustrations on its customers' websites. (*Id.* ¶ 9.) It obtains these photographs by license from various sources. (*Id.*.)

Defendant is a corporation with a principal place of business in Pawtucket, Rhode Island. (*Id.* ¶ 3.) It claims to hold the copyright on multiple images, including certain images displayed on websites created by plaintiff for its customers. (*Id.* ¶ 11.)

In July 2016, defendant sent copyright infringement notices to three of plaintiff's customers. (*Id.* ¶ 11.) These notices alleged the unauthorized use of a photograph of a prepared plate of beef brisket with roasted vegetables. (*Id.* ¶¶ 10–11.) Defendant sent each customer an invoice for $8,000. (*Id.* ¶ 19.) The three customers forwarded the infringement notices and invoices to plaintiff. (*Id.* ¶ 11.) Plaintiff determined that it "likely obtained rights in the Brisket Photograph" when it acquired the assets of a company called NeXpansion in 2003. (*Id.* ¶ 12.) In

August 2016, it provided this information to defendant and removed the brisket photo pending resolution of the dispute over ownership of the image. (*Id.* ¶ 13.)

In September 2016, another of plaintiff's customers received an infringement notice and an invoice for $8,000—this time regarding the use on its website of a photograph of a tuna fish sandwich. (*Id.* ¶ 19.)

Between August and November 2016, the parties sought unsuccessfully to resolve their dispute. (*See id.* ¶¶ 13–25.) Plaintiff requested proof of copyright ownership and licensing information. (*Id.* ¶ 15, 17, 21.) It also requested a list of all photographs which defendant claimed were used in violation of defendant's rights. (*Id.* ¶17.) In November 2016, defendant advised plaintiff of three additional images which it claimed were displayed without authorization, including photographs of a turkey and ham wrap, a sausage and pasta dish, and pork ribs. (*Id.* ¶ 20.) The parties were unable to reach any agreement. (*See id.* at 24–25.)

Plaintiff filed suit in November 2016. (Doc. 1.) It seeks a declaratory judgment that it has not infringed defendant's copyrights, that defendant lacks grounds to threaten or file suit against plaintiff or its customers, and that any infringement is not willful and any remedy should not exceed the market value of the image. (Doc. 10 ¶ 1.)

Plaintiff also makes a claim of violation of the VCPA. (*Id.* ¶¶ 44–53.) It alleges that it is a "consumer" within the meaning of the VCPA and that defendant is a "seller" of goods and services in commerce within the meaning of the Act. (*Id.* ¶¶ 45–46.) It alleges that defendant engages in unfair or deceptive acts or conduct by using a computerized matching system to send out invoices for $8,000 to multiple users of an image with the knowledge that many recipients are likely to hold valid licenses. (*Id.* ¶ 47.) It seeks damages and attorney's fees under the VCPA.

## STANDARD OF REVIEW

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Accordingly, the court must accept all allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). To survive a 12(c) motion, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2).

## ANALYSIS

The VCPA prohibits "unfair methods of competition in commerce" and "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453. It was enacted in 1967 to "complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451. The VCPA has long functioned as a state law analog to the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.*[2] In contrast to the federal act, the VCPA offers a private cause of action to injured consumers in addition to enforcement actions brought by the Vermont Attorney General. 9 V.S.A. § 2461.

---

[2] During the 1960's and 1970's, similar legislation, often described as "Little FTC Acts," was enacted in all 50 states and the District of Columbia. In states like Vermont that authorized private lawsuits, the statutory cause of action largely replaced common law fraud claims as the remedy for deceptive trade practices. *See* Jack E. Karns, *State Regulation of Deceptive Trade Practices Under "Little FTC Acts"*, 994 Dickinson L. Rev. 373, 374–75 (1990).

The scope of potential recovery under the VCPA and the breadth of conduct which could be described as "false or fraudulent" within the meaning of the private remedy provision which appears at 9 V.S.A. § 2461(b) have given rise to substantial litigation over who may file a lawsuit under the VCPA and the specific elements of the claim. The availability of attorney's fees and treble damages has encouraged parties to seek to extend the reach of the VCPA beyond transactions between individual consumers and sellers of goods and services. During the first three decades of the life of the VCPA, there was uncertainty about its application to disputes between businesses. The act as originally passed defined "consumers" subject to its protection as persons obtaining good or services "for his or her use or benefit or the use of benefit of a member of his or her household." 9 V.S.A. § 2451a(a). In 1997, the legislature amended this provision to cover persons who obtain goods or services not for resale but for use in the operation of the business. In *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 184 Vt. 355 (2008), the Vermont Supreme Court held that as amended the VCPA permitted lawsuits by business organizations as well as individual consumers.

The determination of which claims were covered by the VCPA is a matter of statutory construction requiring consideration of the elements of the claim as these appear at 9 V.S.A. § 2461(b) (establishing the private cause of action) and § 2451a (definitions). As with any question of statutory construction, the court starts with the language of the statute. Section 2461(b) provides that an action may be filed by "any consumer." "Consumer" is defined at 9 V.S.A. § 2451a(a) as any person who purchases or otherwise agrees to pay for goods or services for his or her own use **or** "a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade of business for the use or benefit of his or her business or in connection with the operation of his or

her business." In order to record damages, the consumer must contract for goods or services "in reliance upon false or fraudulent representations or practices . . . or sustain[] damages or injury as a result of [such] representations or practices . . . ." 24 V.S.A. § 2461(b). These provisions identify who is entitled to sue: consumers harmed by reliance on unfair or deceptive acts in commerce.

The Vermont Supreme Court has supplied additional elements which largely follow decisions interpreting the Federal Trade Commission Act and further define the types of conduct actionable under the VCPA. *See generally Poulin v. Ford Motor Co.*, 147 Vt. 120, 124–35 (1986); *Peabody v. P.J.'s Auto Village, Inc.*, 153 Vt. 55 (1989); *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998); *Greene v. Stevens Gas Service*, 177 Vt. 90 (2004); *Vastano v. Killington Valley Real Estate*, 182 Vt. 550 (2007). These decisions hold that a consumer must show three elements to establish a "deceptive act or practice" under the Act: "(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect the consumer's conduct or decision with regard to a product." *Greene*, 177 Vt. at 97 (quoting *Peabody*, 153 Vt. at 57).

In this case, the arguments raised by defendant in favor of dismissal concern both the requirements for who can sue and the elements of reliance on a deceptive act and resulting damage or injury.

I. **Allegations of damages compensable under the VCPA**

Defendant argues that the FAC fails to demonstrate "reliance" by plaintiff or that plaintiff "suffered any damage as a result of [defendant's] actions." (Doc. 65 at 10.) Defendant notes that the notice of infringements and invoices were sent to plaintiff's customers in order to settle

legal claims, not as offers to contract for goods and services. (*Id.*) No one entered into a contract with defendant as a consequence of the communications sent to plaintiff's customers or directly to plaintiff itself. (*Id.*) With respect to the alternative claim that plaintiff suffered damages as a result of unfair or deceptive conduct, defendant argues that it originally communicated directly with the grocery stores, not with plaintiff, and that it was plaintiff who initiated contact directly between the parties. (*Id.* at 11.) In defendant's view, any reputational damage to plaintiff in the eyes of its customers was well-deserved as "the result of [plaintiff] outing its own customers in legal jeopardy through unlicensed distribution of the Accused Images." (*Id.*)

Plaintiff responds that it makes no claim of reliance upon false statements by defendant. Its claim is based solely on "injury due to [defendant's] prohibited representations and practices." (Doc. 75 at 10.) It directs the court to its claim that false statements of copyright violation have required it to spend time investigating and responding to defendant's allegations and damaging its reputation with its customers.

Whether defendant's notices of infringement and related invoices are false is the principal factual dispute in this case. In the context of a motion to dismiss, however, the court accepts the allegations of the complaint as true. *Lanier*, 838 F.3d at 150. Viewed through that lens, defendant is accused of sending false statements to plaintiff's customers who have relied upon plaintiff to furnish appropriate, legal content to their websites. The infringement notices effectively call plaintiff irresponsible or negligent at best and a copyright pirate at worst. That the statements were made to customers rather than directly to plaintiff elevates the potential for reputational harm. Such allegations of damaging conduct based upon a series of false statements

7

satisfies the statutory element of "damage or injury as a result any false or fraudulent representations." 24 V.S.A. § 2461(b).

## II. Definition of a "Consumer"

Only "consumers" have the right to sue under the VCPA. Defendant argues that plaintiff is not a consumer within the meaning of 9 V.S.A. § 2451a(a) for several reasons. (Doc. 65 at 12.) First, it contends that plaintiff did not purchase, lease, or otherwise agree to pay for the images in dispute. (*Id.*) Second, it argues that the images were used for commercial purposes and not for personal or household use. (*Id.*)

Plaintiff responds that the FAC alleges that Plaintiff routinely purchases licenses for the use of stock photos of prepared foods on its customers' websites. (Doc. 75 at 12.) It denies that there is any requirement in the VCPA that it purchase products directly from defendant. (*Id.*) With respect to the argument concerning personal use by consumers, it points to the amendment of the VCPA in 1997 and the subsequent decision of the Supreme Court in *Rathe Salvage* extending remedies available under the VCPA to business entities. (*Id.* at 12–13.)

The court rejects defendant's arguments. Plaintiff satisfies the definition of a consumer in § 2451a(a) as a person who purchases or contracts for goods or services for the use of the business or in connection with its operation. The FAC alleges that plaintiff licenses photographs of prepared food from various parties. (Doc. 10 ¶ 9.) Plaintiff makes use of the photos it licenses in the operation of its business by placing these photos on customers' websites. Plaintiff's actions fall within the broad scope of actions by a business entity which purchases goods or services for the use or benefit of its business.

Defendant's second argument is that plaintiff is not a consumer because it did not buy goods or services from defendant. The argument is essentially that privity of contract between

8

the parties is a necessary element of a consumer fraud claim. In *Elkins v. Microsoft Corp.*, 174 Vt. 328 (2002), the Vermont Supreme Court rejected the argument that the VCPA required privity between the parties. The court relied on the language of the VCPA which permits "any consumer" damaged by a false or fraudulent representation or practice to sue "the seller, solicitor or other violator . . . ." 9 V.S.A. § 2461(b) (emphasis added); *cf. Poulin*, 147 Vt. at 120 (auto manufacturer liable under the VCPA despite lack of privity with purchaser); *Carter*, 168 Vt. at 48 (real estate agent liable as the seller of a home despite not being the seller); *Whitney v. Nature's Way Pest Control, Inc.*, 2016 WL 3683525 (D. Vt. July 6, 2016) (VCPA claim allowed despite lack of privity).

In this case, there can be little question that a recipient of false invoices would have the right to sue the party who sent them. As in *Elkins*, the relationship between the parties in this case is indirect. Defendant has sent allegedly false invoices to plaintiff's customers, not to plaintiff directly. That single degree of separation provides no defense under the VCPA, which reaches all violators, not just those who are direct sellers to the ultimate user of the product.

### III.     No Correspondence Directed to Plaintiff

Defendant also seeks dismissal due to the lack of a Vermont "nexus." (Doc. 65 at 13–14.) Defendant sent notices of infringement and invoices to grocery stores located in states other than Vermont. It claims no knowledge of plaintiff's role in posting the images.

Plaintiff responds that knowledge of plaintiff's role is not a requirement and that plaintiff has provided detailed allegations of the damages it sustained. (Doc. 75 at 13–14.) The court agrees. Certainly, there is no requirement in the VCPA that the defendant intended to harm a particular party or that it have knowledge in advance of the effect of its actions. *See Poulin*, 147 Vt. at 126 ("Neither the prevailing judicial definition nor the recent FTC definition . . . require

9

intent.") It is true, of course, that the VCPA is intended to address fraudulent conduct affecting Vermont residents. The allegations in this case satisfy that requirement since plaintiff is located in Vermont and alleges that actions by defendant taken outside of the state have damaged it here. These allegations of a Vermont nexus are sufficient to defeat a motion to dismiss.

## IV. Deceptive Acts

Defendant denies engaging in deceptive actions. (Doc. 65 at 15.) It points to a disclaimer in its notice of infringement inviting a grocery store with proper licensing in place to contact defendant. (*Id.* at 15–16.) It describes the three grocery stores it contacted as "well-established and sophisticated companies who are not likely to be misled by anything as straightforward as a letter asking to provide proof of a license or, if no license exists, pay a pre-determined amount to resolve the potential claim." (*Id.* at 16.) Finally, it argues that since the suit was filed, plaintiff has located licenses for two of the five images which confirms the accuracy of the accusations concerning the other three. (*Id.*)

Plaintiff describes the parties' dispute over the falsity of the defendant's statements and their materiality as factual in nature. (Doc. 75 at 18.) The court agrees. The relative sophistication of the grocery stores, the honesty and basis for an invoice stating that the amount due for the use of one of the images is $8,000, and the materiality of the statements defined by their likely effect on a reasonable recipient are all factual determinations which are disputed by the parties. Therefore, these matters cannot be resolved in favor of the defendant on the face of the pleadings.

## V. "In Commerce"

The VCPA addresses transactions that take place "in commerce." 9 V.S.A. § 2453(a) The Vermont Supreme Court interpreted the phrase "in commerce" in *Foti Fuels, Inc. v. Kurrle*

*Corp.*, 195 Vt. 524 (2013). The court joined other state supreme courts in concluding that the phrase excluded strictly private contractual disputes from the VCPA. The court held that the "in commerce" phrase served the important function of limiting the VCPA to acts that occur in the consumer marketplace. "To be considered 'in commerce,' the transaction must take place in the context of [an] ongoing business in which the defendant holds himself out to the public. Further, the practice must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general." *Id.* at 536 (internal citations and quotations omitted).

Defendant contends that its actions did not take place "in commerce" under the VCPA because its actions "did not occur in the consumer marketplace." (Doc. 65 at 17.) Defendant seeks to describe the parties' dispute as a "one-off" negotiation between two private companies. (*Id.* at 17–18.) In response, Plaintiff describes the defendant's conduct as the activities of a copyright troll which are directed at many companies who qualify as "consumers" under the CPA as amended. (Doc. 75 at 19.)

The court considers the facts as they are alleged in the FAC. These allegations are sufficient to make out a claim of unfair competition "in commerce." Plaintiff alleges that defendant "tracks the use by third parties of images it allegedly owns using a computerized image matching system, and sends a copyright infringement notice along with an 'Invoice' to any third party it discovers using its photographs. It seeks to recover $8,000 from multiple users. In many cases, the companies who receive the notices have valid licenses from defendant through its relationship with another licensor (iStock). (Doc. 10 ¶¶ 33–35.)

For purposes of a motion to dismiss, these facts are sufficient to establish that defendant is alleged to be engaged in a scheme of deceptive practices in which it seeks to recover money

from persons who may actually owe it little or nothing. It remains plaintiff's burden to prove these allegations. But, accepted as true, they are sufficient to make out a plausible claim that defendant is engaged "in commerce" for purposes of the CPA.

## CONCLUSION

The defendant's Motion for Partial Judgment on the Pleadings (Doc. 64) is DENIED.

Dated at Rutland, in the District of Vermont, this 4th day of February, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court