**Exhibit 38 to the Declaration of Matthew S. Borick**

## ADLIFE DIGITAL FOOD PHOTOGRAPHY DISTRIBUTOR AGREEMENT

AGREEMENT made this __8th__ day of __June__, 1994 by and between MULTI-AD SERVICES, INC., hereinafter referred to as "Distributor", with its principal place of business at 1720 West Detweiller Dr., Peoria, Illinois 61614 and ADLIFE MARKETING AND COMMUNICATIONS CO., INC., hereinafter referred to as "Developer" with its principal offices at 555 University Avenue, Norwood, MA 02062.

WHEREAS, Developer produces digital food photos (hereinafter referred to as "digital photos") suitable for remarketing on CD-ROM disc by Distributor;

WHEREAS, Distributor desires to market the digital photos produced by Developer on CD-ROM disc to be distributed on an updated CD-ROM disc every two (2) months to Distributor's customer base;

NOW THEREFORE, in consideration of the mutual promises contained herein, it is hereby agreed as follows:

### 1. License

#### 1.1 Distribution Rights

During the term hereof, Developer grants to Distributor the non-exclusive world-wide right and license to market and distribute digital photos to be produced pursuant hereto by Developer as required hereunder. Developer will press a one off CD-ROM containing fifty (50) digital photos and deliver same to Distributor pursuant to Schedule 1 attached hereto and by this reference incorporated herein. Distributor may make modifications to Developer's one off CD-ROM, including but not limited to indexing and separating the photos into twenty-five (25) photos to

represent each month to remain consistent with Distributor's syndicated service, and such other modifications, as Distributor, in its sole discretion determines. Nothing herein shall be interpreted to preclude the Distributor from exercising any right or license to enter into a VAR, OEM, Telemarketing or other redistribution agreement or license with regard Developer's digital photos.

### 1.2 License to Use Trademark and Trade Name

Any and all trademarks and trade names which Developer uses in connection with the license granted hereunder are and shall remain the exclusive property of Developer. This Agreement gives Distributor no rights therein except for a limited license to reproduce trademarks and trade names as necessary for, and for the sole purpose of allowing, Distributor to fully promote and market the digital photos pursuant to the terms of this Agreement.

### 1.3 Competition by Distributor

Nothing in this Agreement shall impair Distributor's rights at all times to use or distribute, without obligation to Developer, similar ideas, digital photos, or computer products which have been, without infringement upon Developer's copyright or trade secrets, independently submitted by others to Distributor independently developed by Distributor, or which have become publicly known, whether before or after execution of this Agreement. Further, Distributor may procure, market, and distribute products and services at any time which may be competitive with Developer or with the digital photos produced by Developer or any other product sold by Developer.

### 1.4 Term

This Agreement shall continue in full force and effect from the date first above written, until March 1, 1999 and shall thereafter, be renewed for additional periods of one (1) year, unless terminated in writing by either party at least ninety (90) days prior to the end of the original term or any renewal term. Unless otherwise mutually agreed to in writing by both parties, the terms of any renewal term shall be the same as contained herein.

## 2. Service and Payment

### 2.1 Artwork

Developer agrees to provide Distributor with a one off CD-ROM containing fifty (50) digital food photos pursuant to the volume and delivery dates set forth on Schedule 1 and each CD-ROM shall contain a variety of different food groups to satisfy Distributor's reasonable market needs. Developer and Distributor will consult in good faith with regard the contents of digital photos to be contained in each one off CD-ROM delivered to Distributor hereunder. Developer and Distributor further agree to exercise good faith in order to develop certain standards with regard to the size, format, line screen and other conditions of the electronic files to ensure reasonable compatibility with Distributors CD-ROM requirements and to insure said files meet acceptable industry standards. Developer shall be responsible for all costs and freight incurred in the production and shipment of the one off CD-ROM containing the digital photo files to Distributor.

### 2.2 Terms of Payment

Distributor agrees to pay Developer a royalty fee of thirty-five percent (35%) of net sales of all Distributor's food

photography CD-ROMS containing Developer's digital photos on a quarterly basis. Unless otherwise mutually agreed to in writing, Distributor shall make said royalty payments and provide Developer with a royalty report within thirty (30) days following the end of each quarter. A late payment charge of one and one-half percent (1.5%) per month shall be charged upon unpaid balances due after said thirty (30) day period. The parties agree and understand that Distributor will purchase from Developer on an individual basis, four (4) digital photos each month, at a mutually agreed price, for placement in Distributor's Ad-Builder product for purposes of promoting Developer's products. Developer agrees that it shall not be entitled to any royalty from Distributor's Ad-Builder product containing said promotional photos.

### 2.3 Definition of Net Sales

"Net Sales" for the purposes of this Agreement means the price received by Distributor for each CD-ROM sold by Distributor to a third party, which CD-ROM contains Developer's digital photos, exclusive of all taxes (other than those levied on Distributor's net income), insurance, shipping and other incidental charges (such as restocking fees), and less sales commissions paid to third parties, credits, discounts, rebates and any refunds for returns. Distributor may set the price for its CD-ROMS containing Developer's digital photos, including discounts, in its sole discretion. Distributor may also distribute, free of charge, a commercially reasonable number of demonstration CD-ROMS containing Developer's digital photos as promotional and marketing incentives and no royalty shall be due Developer thereon.

### 2.4 Competitive Pricing

Developer agrees that it will not sell its digital photos to a third party competitor of Distributor upon terms which will result in an effective royalty to a third party competitor of Distributor of less than the 35% of net sale royalty being charged Distributor hereunder.

### 3. Ownership and Property Rights

#### 3.1 Ownership

Developer represents and warrants that it has all necessary rights in and to all copyrights, patents and other proprietary rights associated with the digital photos that are necessary to market, distribute and license same. Developer has the unrestricted right and authority to enter into this Agreement and to grant the rights and licenses hereunder with respect to the digital photos.

#### 3.2 Property Rights

Distributor acknowledges and agrees that the digital photos and all other items licensed hereunder and all copies thereof constitute valuable trade secrets or proprietary and confidential information of Developer; that title thereto is and shall remain in Developer; and that all applicable copyrights, trade secrets, patents and other intellectual and property rights in the digital photos and all other items licensed hereunder are and shall remain in Developer. All other aspects of the digital photos and all other items licensed hereunder, including without limitation, programs, methods of processing, the specific design and structure of individual programs and their interaction and the unique programming techniques employed therein, as well as screen formats are and shall remain the sole and exclusive property of Developer

and shall not be sold, revealed, disclosed or otherwise communicated, directly or indirectly, by Distributor to any person, company or institution whatsoever, other than for the purposes set forth herein.

It is expressly understood and agreed that no title to, or ownership of, the digital photos or any part thereof, is hereby transferred to Distributor. Appropriate copyright notices shall appear on all diskettes and other tangible media distributed by Distributor. All use of any Developer trademark in any marketing and promotion, including but not limited to, advertisements and packaging, shall contain notification that such trademark is a trademark which was developed and is owned by Developer.

### 3.3 Unauthorized Copying

Distributor agrees that it will not copy, modify or reproduce the digital photos in any way, except as otherwise provided herein. However, Distributor is not responsible for the disclosure, use, modification or copying of the digital photos by its customers or any other third party so long as Distributor had no prior knowledge that its customers or any other third party intended to disclose, use, modify, or copy the digital photos. Distributor agrees to notify Developer promptly of any circumstances Distributor has knowledge of relating to any unauthorized use or copying of the digital photos by any person or entity not authorized to do so.

### 4. Warranty

### 4.1 Customer Warranty

Developer warrants that the digital photos will be professionally produced in accordance with generally accepted industry standards of quality and that the contents of each one off CD-ROM shall be produced after reasonable consultation with

Distributor with regard its market needs. Distributor acknowledges and agrees that this warranty furnished by Developer is the only warranty made (or to be made) with respect thereto.

### 4.2 Disclaimer of Additional Warranties

OTHER THAN THOSE WARRANTIES SET FORTH IN PARAGRAPH 3.1 AND 4.1, DEVELOPER SPECIFICALLY DISCLAIMS ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO DEFECTS IN THE DIGITAL PHOTOS OR OTHER PHYSICAL MEDIA AND DOCUMENTATION, OPERATION OF THE DIGITAL PHOTOS, AND ANY PARTICULAR APPLICATION OR USE OF THE DIGITAL PHOTOS. IN NO EVENT SHALL DEVELOPER BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES.

## 5. Termination

### 5.1 Events Causing Termination

This Agreement may be terminated by Developer or Distributor under any of the following conditions:

(a) if the other party shall be declared insolvent or bankrupt;

(b) if a petition is filed in any court and not dismissed in ninety (90) days to declare the other party bankrupt or for a reorganization under the Bankruptcy Law or any similar statute;

(c) if a Trustee in Bankruptcy or a Receiver or similar entity is appointed for the other party; or

(d)   If either party repudiates or fails to timely perform any obligation under this Agreement, the nondefaulting party shall serve written notice of default upon the other party and if such default is not cured within seven (7) calendar days after service of such notice, then:

(i)   if Developer is in default, Distributor may, upon service of notice to Developer within thirty (30) calendar days after service of the default notice, either terminate this Agreement or seek specific performance or other available legal remedies;

(ii)   if Distributor is in default, Developer may, upon service of notice to Developer within thirty (30) calendar days after service of the default notice, either terminate this Agreement or seek specific performance or other available legal remedies.

### 5.2 Duties Upon Termination

Upon termination of this Agreement for any reason, other than non-payment by Distributor for which Distributor has no valid right of set off, the parties agree to continue their cooperation in order to effect an orderly termination of their relationship. Developer, notwithstanding the termination of this Agreement, shall continue to provide the one off CD-ROMS containing its digital photos to Distributor for a period of four (4) months following the termination of this Agreement.  This is intended to permit Distributor to press and distribute at least two (2) additional CD-ROMS for its existing customer base to allow Distributor to protect its existing customer base and provide them with an orderly transition to a different source of digital photos.  Distributor shall pay Developer pursuant to the royalty provisions of this Agreement for the sale of any post-termination digital photos sold

by Distributor pursuant to this paragraph. In the event that this Agreement is terminated for any reason, and as a result of said termination, Distributor must refund any amounts to any customer of any service containing Developer's digital photos, Developer shall reimburse Distributor for any royalty which Developer has received which is attributable to said refunds within thirty (30) days of written demand by Distributor, which written demand shall set forth the basis for the refund.

## 6. Indemnification

### 6.1 Copyrights, Patents and Intellectual Property

Developer shall indemnify, defend and hold Distributor harmless from any claims, demands, liabilities, losses, damages, judgments or settlements, including all reasonable costs and expenses related thereto, including attorney's fees, directly or indirectly resulting from any claimed infringement or violation of any copyright, patent or other intellectual property right with respect to the digital photos so long as the digital photos are used in accordance with the documentation and specifications provided by Developer, and Distributor has adhered to its obligations under this Agreement. Following notice of a claim or a threat of actual suit, Developer shall:

(a) procure for Distributor the right to continue to use, distribute and sell the digital photos at no additional expense to Distributor; or

(b) provide Distributor with a non-infringing version of the digital photos.

9

### 6.2 Cooperation by Distributor

Notwithstanding paragraph 6.1 of this Agreement, Developer is under no obligation to indemnify and hold Distributor harmless unless:

(a) Distributor shall have promptly notified Developer of the suit or claim and furnished Developer with a copy of each communication, notice or other action relating to said claim;

(b) Developer shall have the right to assume sole authority to conduct the trial or settlement of such claim or any negotiations related thereto at Developer's expense provided Distributor shall be informed of the status of negotiations and informed of the particulars of any formal settlement offer prior to submission of any offer to a third party; and

(c) Distributor shall provide such reasonable information and assistance as is requested by Developer in connection with such claim or suit.

### 6.3 Indemnification by Distributor

Distributor shall indemnify, defend and hold Developer harmless from any claims, demands, liabilities, losses, damages, judgments or settlements, including all reasonable costs and expenses related thereto, including attorney's fees, directly or indirectly resulting from any claimed infringement or violation of any copyright, patent or other intellectual property right resulting from any negligence or act of the Distributor with respect to the digital photos, except for those photos submitted by the Developer in accordance with Section 2.1 above, and further excepting any matter arising as a result of a violation of Developers representations and warranties set forth in Section 3.1 above.

### 6.4 Cooperation by Developer

Notwithstanding paragraph 6.3 of this Agreement, Distributor is under no obligation to indemnify and hold Developer harmless unless:

(a) Developer shall have promptly notified Distributor of the suit or claim and furnished Distributor with a copy of each communication, notice or other action relating to said claim;

(b) Distributor shall have the right to assume sole authority to conduct the trial or settlement of such claim or any negotiations related thereto at Distributor's expense provided Developer shall be informed of the status of negotiations and informed of the particulars of any formal settlement offer prior to submission of any offer to a third party; and

(c) Developer shall provide such reasonable information and assistance as is requested by Distributor in connection with such claim or suit.

### 7. Product Promotion and Support

### 7.1 Distributor's Obligation

During the term hereof, Distributor, as part of its activities to promote the distribution of the digital photos, agrees to confer periodically with Developer, at Developer's request, on matters relating to market conditions, sales forecasting, product planning and update, promotional and marketing strategies and programming. However, Distributor shall have sole control and discretion with regard the marketing and sale of Developer's digital photos and the media said digital photos are incorporated in for resale.

11

## 8. General

### 8.1 Confidential Information

Developer and Distributor acknowledge that, in the course of dealings between the parties, each party will acquire information about the other party, its business activities and operations, its technical information and trade secrets, and its customer base of a highly confidential and proprietary nature. Each party shall hold such information in strict confidence and shall not reveal the same, except for any information which is generally available to or known to the public; known to such party prior to the negotiations leading to this Agreement; independently developed by such party outside the scope of this Agreement; or lawfully disclosed by or to a third party or tribunal. The confidential information of each party shall be safeguarded, including but not limited to customer lists, by the other to the same extent that it safeguards its own confidential materials or data relating to its own business.

### 8.2 Force Majeure

Neither party shall be liable or deemed to be in default for any delay or failure in performance under this Agreement or interruption of service resulting, directly or indirectly, from acts of God, civil or military authority, acts of the public enemy, war, riots, civil disturbances, insurrections, accidents, fire, explosions, earthquakes, floods, the elements, strikes, labor disputes, shortages of suitable parts, materials, labor or transportation or any causes beyond the reasonable control of such party.

### 8.3 Jurisdiction and Venue

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and

the State of Illinois. Non-exclusive jurisdiction for litigation of any dispute, controversy or claim arising out of, in connection with, or in relation to this Agreement, or the breach thereof, may be in the United States Federal District Courts in Peoria, Illinois, or Boston, Massachusetts, or in the Illinois or Massachusetts State Courts having competent jurisdiction, and located within Peoria, Illinois or Boston, Massachusetts.

### 8.4 Entire Agreement

This Agreement, including any Schedules attached hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous proposals, negotiations, representations, commitments, writings and all other communications between the parties, both oral and written.

This Agreement may not be released, discharged, changed or modified except by an instrument in writing signed by a duly authorized representative of each of the parties.

The terms of this Agreement shall prevail in the event that there shall be any variance with the terms and conditions of any invoice or other such document submitted by Developer or any purchase order or any other such document submitted by Distributor.

This Agreement shall not be valid until signed and accepted by both parties and no change, termination or attempted waiver of any of the provisions hereof shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

### 8.5 Independent Contractors

It is expressly agreed that Developer and Distributor are acting hereunder as independent contractors and under no circumstances shall any of the employees of one party be deemed the

13

employees of the other for any purpose. This Agreement shall not be construed as authority for either party to act for the other party in any agency or other capacity or to make commitments of any kind for the account of, or on behalf of, the other party, except to the extent, and for the purposes, expressly provided for and set forth herein.

### 8.6 Attorneys' Fees

In any action between the parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorneys' fees.

### 8.7 Notice

Any notice required to be given by either party to the other shall be deemed given if in writing and actually delivered or deposited in the United States mail in registered or certified form, return receipt requested, postage prepaid, addressed to the party to whom notice is being given at the address of such party set forth above or to such other address to which the sending party has been directed to send notices by the addressee.

### 8.8 Assignment

This Agreement is not assignable by either party hereto without the consent of the other, except: (a) in the case of a merger, sale of all or substantially all of the assets, or other corporate or business reorganization of the assigning party; or (b) the sale of all rights to license and sublicense the digital photos to the purchaser of said rights. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors.

14

### 8.9 Severability

If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement.

### 8.10 Waiver

No waiver by any party of any breach of any provision hereof shall constitute a waiver of any other breach of that or any other provision hereof.

### 8.11 Section Headings

Section Headings are inserted for convenience only and will not be considered to define, limit or effect the interpretation or construction of the Agreement.

### 8.12 Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by a duly authorized representative as of the date set forth above.

ADLIFE MARKETING AND COMMUNICATIONS CO., INC.

BY: _____
Title: President

MULTI-AD SERVICES, INC.

BY: _____
Title: VP Media Services

# Schedule 1

| Volume | Transparencies Due to MASI | Product Ship Date |
|---|---|---|
| May/June | January 24, 1994 | March 22, 1994 |
| July/August | March 24, 1994 | May 23, 1994 |
| September/October | May 24, 1994 | July 22, 1994 |
| November/December | July 25, 1994 | September 22, 1994 |
| January/February '95 | September 23, 1994 | November 22, 1994 |

Per agreement, AdLife will provide 50 individual color transparencies by the above-listed due dates. Multi-Ad Services will provide the scanning services necessary to digitize the photos, create clipping paths, and create a CD-ROM disk from these transparencies.

Agreed this 8th day of June, 1994.

AdLife Marketing & Comm., Inc:

_[signature]_
Signature

John P. Puccio
Printed Name

President
Title

June 8, 1994
Date

Multi-Ad Services, Inc.:

_[signature]_
Signature

George R. Messed
Printed Name

V.P. Media Services
Title

June 8, 1994
Date Enacted

## FIRST AMENDMENT TO ADLIFE DIGITAL FOOD PHOTOGRAPHY DISTRIBUTER AGREEMENT

This First Amendment to AdLife Digital Distributor Agreement ("First Amendment") is dated as of September 13, 2011, by and between Multi-Ad Services, Inc., an Illinois corporation ("Distributor") and AdLife Marketing And Communications Co., Inc. ("Developer").

WHEREAS, Distributor and Developer have entered into that certain AdLife Digital Food Photography Distributor Agreement, dated June 8, 1994 (the "Agreement"); and

WHEREAS, Distributor desires to market, sell and distribute Developer's digital photos on a stand alone basis; and

WHEREAS, the parties hereto desire to amend the Agreement.

NOW, THEREFORE, the parties agree as follows:

1.  Section 2.2 Terms of Payment of the Agreement shall be deleted in its entirety and replaced with the following:

    Distributor agrees to pay Developer a royalty fee of thirty-five percent (35%) of net sales of all Distributor's food photography and fifty percent (50%) of net sales of all Distributor's automotive images and photos containing Developer's digital photos on a quarterly basis. Unless otherwise mutually agreed to in writing, Distributor shall make said royalty payments and provide Developer with a royalty report within thirty (30) days following the end of each quarter. A late payment charge of one and one-half percent (1.5%) per month shall be charged upon unpaid balances due after said thirty (30) day period. The parties agree and understand that Distributor will purchase from Developer on an individual basis, four (4) digital photos each month, at a mutually agreed price, for placement in Distributor's Ad-Builder product for purposes of promoting Developer's products. Developer agrees that it shall not be entitled to any royalty from Distributor's Ad-Builder product containing said promotional photos.

2.  Section 2.3 Definition of Net Sales shall be deleted in its entirety and replaced with the following:

    "Net Sales" for the purposes of this Agreement means the price received by Distributor for each image, photo or CD-ROM sold by Distributor to a third party, which image, photo or CD-ROM contains Developer's digital photos, exclusive of all taxes (other than those levied on Distributor's net income), insurance, shipping and other incidental charges (such as restocking fees), and less sales commissions paid to third parties, credits, discounts, rebates and any refunds for returns. Distributor may set the price for its images, photos and CD-ROMS containing Developer's digital photos, including discounts, in its sole discretion. Distributor may also distribute, free of charge, a commercially reasonable number of demonstration CD-ROMS containing Developer's

digital photos as promotional and marketing incentives and no royalty shall be due Developer thereon.

3. To facilitate execution, this First Amendment may be executed in as many counterparts as may be required; and it shall not be necessary that the signature of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, or that the signatures of the persons required to bind any party, appear on one or more of such counterparts. All counterparts shall collectively constitute a single document. The parties acknowledge that photocopies of this First Amendment which have been executed by the parties hereto or their respective agents shall be binding upon the parties as if such photocopies were originals regardless of whether such photocopies of this First Amendment have been delivered by personal service, regular mail, facsimile transmission or otherwise. Upon request from any party hereto, all other parties agree to execute an original of this First Amendment upon presentation thereof if said document has previously been executed and delivered in photocopy form by personal delivery, facsimile transmission, regular mail or otherwise.

4. Except as specifically amended herein, the Agreement shall continue in full force and effect in accordance with its original terms. Reference to this specific First Amendment need not be made in any note, document, letter, certificate, the Agreement itself, or any communication issued or made pursuant to or with respect to the Agreement, any reference to the Agreement being sufficient to refer to the Agreement as amended hereby. All items used herein which are defined in the Agreement shall have the same meaning herein as in the Agreement. In the event of any conflict between the terms of the Agreement and the terms of this First Amendment, this First Amendment shall control.

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed as of the date and year first above written.

**DISTRIBUTOR:**

Multi-Ad Services, Inc.,

By: _____

Name: Jill Addy Wright

Title: Senior Vice President

**DEVELOPER:**

AdLife Marketing And
Communications Co., Inc.

By: _____

Name: John P Puccio Jr

Title: Executive Vice President

211-390